STATE OF NORTH CAROLINA v. JOHN FINTON STEVENS

No. 103A81

(Filed 2 June 1982)

1. **Criminal Law § 181.3— motion for appropriate relief—judicial review of findings**

    In reviewing an order entered on a motion for appropriate relief, the findings of fact made by the trial court are binding upon the appellate court if they are supported by evidence, even though the evidence is conflicting and defendant gave testimony to the contrary. G.S. 15A-1415(b)(3) and G.S. 15A-1420(c)(5).

2. **Constitutional Law § 48; Criminal Law § 23.3— guilty plea not result of ineffective assistance of counsel**

    The evidence presented at a hearing on a motion for appropriate relief supported the trial court's findings of fact, including a finding that defendant's attorney "did not advise [defendant] that he was guilty of armed robbery

merely because he was at the scene with the other participants, but that his advice to the [defendant] to plead guilty was based upon the statements of all co-defendants, the statement of [defendant] himself, and [the attorney's] conversations with the Investigating Officers Byrd and Conerly," and the findings supported the trial court's conclusion that defendant's plea of guilty to armed robbery was knowingly and understandingly made and was not the product of ineffective assistance of counsel.

Justice EXUM dissenting.

Justices CARLTON and MITCHELL join in this dissent.

ON certiorari to review order of *Lee, Judge,* entered 24 March 1981 denying defendant's motion for appropriate relief. The motion was heard at the 12 January 1981 Criminal Session of CUMBERLAND Superior Court.

The proceedings in this case, as garnered from the record on appeal and the findings of fact of Judge Lee to which there are no exceptions, are summarized as follows:

In a warrant issued on 5 September 1977 defendant was charged with the offense of armed robbery. He appeared before the district court and waived his right to court appointed counsel. Thereafter, defendant and his privately retained attorney, Stephen H. Nimocks, filed a written waiver of probable cause hearing in the district court. On 10 October 1977 defendant and his attorney waived the finding and return into court of a bill of indictment and agreed that the case would be tried upon an information filed by Assistant District Attorney Randy S. Gregory. The information alleged that on or about 5 September 1977 defendant, by means of a knife whereby the life of Curtis R. Hammond was endangered and threatened, forcibly took from said Hammond $10.00 in United States currency, a billfold, a checkbook issued by First Citizens Bank & Trust Co. to Hammond, three keys and a fingernail clip, in violation of G.S. 14-87.

In addition to defendant there were three codefendants in this case, they being Michael Len Hopple, Richard Lee Johnson, Jr. and Frank Bralick. All defendants except Bralick, and Hammond gave statements to the investigating officers, Detective Bob Conerly and Detective Billy Byrd. Attorney Nimocks conferred with defendant and with said investigating officers, and went over the statements of the codefendants and the victim with defendant.

On or about 14 September 1977, in response to a call from defendant, Attorney Nimocks went to the Cumberland County Law Enforcement Center and conferred with defendant about the charges in this case and also about two other armed robbery charges against defendant. All of the codefendants wanted to testify for the state and the state did not enter into any plea arrangement with defendant.

Bond in all three cases against defendant was initially set at $35,000.00. On 19 September 1977 an application for a writ of habeas corpus, signed by defendant and by Attorney Nimocks' law partner, was filed. The application prayed that defendant be released to his unit at Fort Bragg on an unsecured appearance bond. The application came on for hearing on 21 September 1977 before Judge Braswell and was treated by him as a motion for bond reduction. At the conclusion of the hearing Judge Braswell set bond at $10,000 in this case and $2,000 in the other two cases.

On the morning of 10 October 1977 defendant appeared in court with his attorney, Mr. Nimocks. Judge Giles R. Clark was presiding over the court and Randy Gregory, Assistant District Attorney, was present representing the state; the courtroom clerk was Mrs. Linda Nichols (Kerik), Assistant Clerk of the court. On behalf of defendant Attorney Nimocks tendered a plea of guilty to the charge set forth in the information. A transcript of plea was prepared and Judge Clark personally examined defendant with regard to the questions appearing on the transcript. Defendant raised questions with respect to questions nine and ten[1] and would not sign the transcript. Thereupon, Judge Clark would not sign the transcript and ordered that it and the plea be stricken.

On the afternoon of 10 October 1977, defendant and his attorney, together with Mr. Gregory for the state, appeared before Judge Clark and defendant, through his attorney, again tendered to the court a plea of guilty. Judge Clark examined defendant with regard to the questions appearing on the transcript of plea. Being satisfied with the answers given by defendant, and defendant having signed the transcript in the presence of Mrs. Nichols,

1. Question 9 is: Do you now plead guilty?
   Question 10 is: Are you in fact guilty?

Judge Clark continued prayer for judgment until 14 October 1977 so that the state could present oral testimony.

On 14 October 1977 Detectives Byrd and Conerly, together with the victim, Curtis Hammond, testified for the state and through their testimony the state presented a factual basis for the plea of guilty. After hearing the evidence presented by the state, defendant requested that prayer for judgment be continued until 31 October 1977 so that he might present evidence.

Thereafter a further hearing was conducted by Judge Clark at which defendant presented testimony. On 4 November 1977 defendant and his attorney, Mr. Nimocks, appeared before Judge Clark. Once again a transcript of plea was taken by Judge Clark. At that time defendant was personally examined by Judge Clark and again on that date defendant signed the transcript of plea and swore to the transcript in the presence of Mrs. Nichols, the Assistant Clerk of Superior Court. Thereupon, judgment was entered by Judge Clark sentencing defendant to prison for not less than 10 nor more than 15 years. Commitment was issued on the judgment.[2]

On 10 October 1977 and on 4 November 1977 Judge Clark questioned defendant personally as to each and every question appearing on the transcript of plea form. On 4 November 1977 Judge Clark questioned defendant extensively and asked many questions of him that were not included on the transcript of plea form. Prior to the entries of the judgment and commitment, Judge Clark satisfied himself that there was a factual basis for the entry of the plea of guilty, that defendant was satisfied with his counsel, that the plea of guilty was the informed choice of defendant and was made freely, voluntarily and understandingly; that no promises with regard to sentencing were made to defendant; and that defendant understood that he had a right to plead not guilty and demand a trial by jury. Subsequent to 4 November 1977 the other two armed robbery charges against defendant were voluntarily dismissed by Mr. Gregory, the Assistant District Attorney.

2. Defendant's brief discloses that in April 1980 he was released on parole; and that he is currently serving his parole in Washington, Illinois where he is gainfully employed.

On or about 17 November 1977 defendant wrote a handwritten letter to Mr. Nimocks from Central Prison in Raleigh in which defendant discussed paying the balance of Mr. Nimocks' fee and his desire to take a welding course while in prison.

On 11 October 1979 defendant, through his present attorneys, filed a motion for appropriate relief pursuant to G.S. 15A-1415. In the motion defendant asked that the court vacate the judgment and commitment entered in this case as well as any guilty plea that defendant may have entered; and that defendant be granted a new trial on the armed robbery charge. In the motion defendant alleged that any guilty plea by him was obtained in violation of his rights under the constitution of the United States and the constitution of the State of North Carolina, and in violation of G.S. 15A-1022, 1026, for the reasons that (1) defendant is in fact innocent of the armed robbery charge and there was no factual basis for a plea of guilty to that charge; (2) the court did not address defendant personally and provide him the information to make the determination required by G.S. 15A-1022; (3) that no verbatim record of the proceedings at which defendant may have entered a plea of guilty was preserved; (4) that any guilty plea that defendant may have entered was involuntary in that he relied on representations that his attorney made to him that if he did plead guilty he would be released from custody and allowed to return to Fort Bragg to continue his tour of duty with the United States Army; and (5) that defendant was denied effective assistance of counsel.

On 10 December 1979, following a hearing, Judge Preston entered an order making findings of fact and conclusions of law and denied the motion for appropriate relief. Thereafter defendant petitioned the Court of Appeals for a writ of certiorari to review the order of Judge Preston. That petition was denied on 20 March 1980. Thereupon defendant petitioned this court for a writ of certiorari. On 15 August 1980 we allowed the petition and remanded the cause to Cumberland Superior Court for an evidentiary hearing.

The evidentiary hearing on the motion was conducted by Judge Lee. At the hearing, defendant testified as a witness for himself and presented seven other witnesses including two police officers from his home state of Illinois, Assistant District At-

torney Gregory and Judge Clark. Defendant attempted to establish the following:

He is a native of Illinois. Before joining the U.S. Army and being assigned to Fort Bragg he served as an informer for the police in his hometown. After his assignment to Fort Bragg, he did some work as an undercover agent for police officers in Fayetteville, Cumberland County and Fort Bragg. On the occasion of the alleged armed robbery he went riding with the codefendants for the purpose of learning from whom they purchased drugs. While riding with them, they picked up Hammond who was hitchhiking. When the driver of the car stopped on a dirt road in a rural area, defendant went over to a ditch to urinate. As he returned to the car, he observed that the codefendants had Hammond on the ground and were removing things from his person. When defendant attempted to stop them, one of the codefendants threatened him with a knife. The codefendants drove off in the automobile and left defendant with Hammond. A little while later they returned. Defendant then reentered the car and rode with the codefendants to Fayetteville where they were stopped by police and arrested.

Defendant stated that while he admitted to Mr. Nimocks that he was present at the time of the robbery, he insisted that he was not a participant; that he was trying to help the victim; that Mr. Nimocks insisted that he plead guilty; that he agreed to plead guilty only after Mr. Nimocks told him that he had arranged with Judge Clark for defendant to be placed on probation and returned to his unit at Fort Bragg; and that his attorney coerced him into pleading guilty.

The Illinois police officers testified that defendant had a good reputation in his hometown and that he had worked with them on various cases before entering the Army. They also corroborated defendant, at least in part, as to representations made to him by Mr. Nimocks prior to the trial.

At the hearing the state presented seven witnesses including Detective Byrd, Mrs. Kerik (the Assistant Clerk), and Mr. Nimocks. The state also introduced the written statements that defendant, codefendants Hopple and Johnson, and the victim gave to police very soon after the robbery.

In his statement Hopple said that he was 19 and a native of Illinois; that he was living (in Fayetteville) at the same house where defendant was living; that defendant was his friend; that defendant was a participant in the robbery; and that it was he (Hopple) who attempted to prevent the robbery and help the victim.

Johnson, 17, stated that he was the driver of the car; that defendant was riding with him in the front seat while all of the others were in the backseat or rear part of the car; that someone in the backseat grabbed the victim; that they all got out of the car; and that defendant at that point drew a knife on the victim and demanded his money.

The victim, 19, stated that when the car stopped on the rural road, one of the men who had been sitting behind the rear seat "grabbed me by my throat and held a knife in front of my throat"; that at the same time, the man in the front passenger seat (identified above as defendant) turned around with a hunting-type knife in his hand, jumped out of the car and "told me to get out . . . "; and that it was one of the men riding in the backseat who told the others "to leave me alone."

Mr. Nimocks testified, among other things, that prior to being employed in this case he had represented defendant in a DUI case; that either before or just after he first conferred with defendant regarding this case, he conferred with Detectives Byrd and Conerly and read the statements they had taken from defendant, the codefendants and the victim; that defendant was also concerned about the other two charges of armed robbery; that he conferred with defendant on more than one occasion; that defendant agreed to plead guilty in this case; and that he was employed by defendant to enter a plea of guilty.

Following the hearing during the week of 12 January 1981, Judge Lee took defendant's motion for appropriate relief under advisement. On 24 March 1981 he entered an order in which he made 36 findings of fact, 5 conclusions of law and denied the motion. Pertinent findings of fact and conclusions of law to which defendant excepted will be set out hereinafter in the opinion.

Defendant petitioned the Court of Appeals for a writ of certiorari to review Judge Lee's order. Upon denial of the motion by

that court, defendant petitioned this court for a writ of certiorari. We allowed the petition on 17 August 1981.

*Attorney General Rufus L. Edmisten, by Associate Attorney Blackwell M. Brogden, Jr., for the state.*

*Bisbee & Nagan, by John H. Bisbee (pro hac vice)[3], and Barry Nakell for defendant-appellant.*

BRITT, Justice.

Although defendant has listed 27 assignments of error based on 23 exceptions, he states that the sole question presented is whether his guilty plea was "unintelligent, unknowing, involuntary, and the result of ineffective assistance of counsel." All of his exceptions relate to certain findings of fact and the conclusions of law made by Judge Lee.

[1] First, we consider the law governing this appeal. G.S. 15A-1415 lists the grounds for appropriate relief which may be asserted by a defendant after verdict and without limitation as to time. Clearly, defendant bases his motion on G.S. 15A-1415(b)(3), contending that his "conviction was obtained in violation of the Constitution of the United States or the Constitution of North Carolina." G.S. 15A-1420 sets out the procedure on motions for appropriate relief and subsection (c)(5) provides

> If an evidentiary hearing is held, the moving party has the burden of proving by a preponderance of the evidence every fact essential to support the motion.

Prior to 1 July 1978, the effective date of Chapter 711 of the 1977 Session Laws which includes the enactments now codified as G.S. 15A-1415 and 1420, the relief which defendant seeks in this cause would have been by virtue of former G.S. 15-217 *et seq.*[4], often referred to as the North Carolina postconviction hearing act. In reviewing orders entered pursuant to that act, this court held that the findings of fact of the trial judge were binding upon

---

3. Mr. Bisbee is licensed to practice law in the State of Illinois but not in North Carolina. By appropriate orders he has been authorized to represent defendant in the courts of this state in this case. Mr. Nakell is a member of the North Carolina Bar.

4. Repealed by Chapter 711, 1977 Session Laws.

the petitioner if they were supported by evidence. *See Branch v. State*, 269 N.C. 642, 153 S.E. 2d 343 (1967); *State v. Graves*, 251 N.C. 550, 112 S.E. 2d 85 (1960); and *Miller v. State*, 237 N.C. 29, 74 S.E. 2d 513, *cert. denied*, 345 U.S. 930 (1953).

We now apply the same test in reviewing findings of fact made by the trial court pursuant to hearings on motions for appropriate relief. This test is applicable even though the evidence is conflicting, *see State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971), and notwithstanding defendant's testimony at the hearing to the contrary, *see State v. Bullock*, 268 N.C. 560, 151 S.E. 2d 9 (1966).

Our inquiry therefore, is to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.

I.

[2] After considering each of defendant's exceptions to the findings of fact, and the evidence presented at the hearing, we conclude that there is no merit in any of them. We will address the exceptions *seriatim*.

Exception No. 1 is to that part of finding (7) in which the trial court found that Attorney Nimocks conferred with Randy Gregory, Assistant District Attorney, who was assigned to prosecute this case, and that defendant was advised by Nimocks of his right to plead not guilty and to have a jury trial. This finding is supported by Nimocks' testimony at the hearing (T p 261) and Nimocks' affidavit (R pp 48-49).

Exception No. 2 is to that part of finding (8) that Nimocks was employed by defendant for the purpose of entering pleas of guilty to the armed robbery charges in this case and in the two other armed robbery cases for a fee of $1,500.00; and that Nimocks advised that they should seek to enter a plea of guilty to one count of armed robbery, offer defendant as a state's witness, and seek to have the other two counts against him dismissed. This finding is supported by Nimocks' testimony (T pp 251-354, particularly pages 254, 259, 261 and 263).

Exception No. 3 is to that part of finding (10) indicated with brackets as follows:

(10) That an Application for Writ of Habeas Corpus was filed herein on September 19, 1977, signed by the petitioner and by John Taylor, law partner of Stephen H. Nimocks. [That in said document the Petitioner, John Finton Stevens, alleged that he had made a confession to Officers Byrd and Conerly, that he desired to plead guilty to one count of armed robbery, that he desired to testify truthfully for the State in all three cases, that he understood that he could be sentenced to life imprisonment on a plea of guilty to one count of armed robbery and that he fully understood that the State would no doubt seek a lengthy active sentence, and that notwithstanding all of that he still desired to plead · guilty.]

This finding is supported by the following paragraphs from defendant's signed application for a writ of habeas corpus (R pp 7-8):

That your petitioner has volunteered and desires to testify in behalf of the State of North Carolina and that he will truthfully testify in behalf of the State as to all facts and matters surrounding the charges which have been brought against him;

That petitioner has made a confession to Officers Conerly and Byrd and that said confession was made truthfully and voluntarily without any threat or promise of reward to your petitioner;

That your petitioner is informed and knows that the maximum sentence he can receive from his plea of guilty to one count of armed robbery is life imprisonment and that your petitioner is informed and believes that the District Attorney for the Twelfth Judicial District of the State of North Carolina would in all probability now argue that he would serve a lengthy active sentence and that in spite of this it is his desire still to plead guilty and to testify in behalf of the state; . . . .

Exception No. 4 is to that part of finding (12) indicated with brackets as follows:

(12) That Petitioner appeared in this Court with his attorney, Stephen H. Nimocks, on October 10, 1977, before the Honorable Giles R. Clark, Judge Presiding, in the morning session of that court. That Randy Gregory, Assistant District Attorney, was present representing the State and that the Courtroom Clerk was Mrs. Linda Nichols, now Mrs. Linda Kerik, Assistant Clerk of Superior Court. [That Petitioner appeared for the purpose of entering a plea of guilty to the charges in this case, and that a plea of guilty was tendered to the Court by Petitioner through his counsel. That Transcript of Plea was taken and that Judge Clark examined the Petitioner personally with regard to the questions appearing on the Transcript of Plea. That Petitioner would not sign that transcript, that Judge Clark would not sign that transcript, and because of questions raised by the Petitioner as to questions nine and ten on the transcript] Judge Clark ordered that that plea and that transcript be stricken and that Mrs. Nichols wrote or caused to written across the face of said transcript the word "Stricken."

This finding is supported by the testimony of defendant (T pp 33-34); Mrs. Kerik, an assistant clerk of superior court who had been present (T pp 240-242); Randy Gregory (T p 114); and Nimocks (T pp 265-268). *See also* First Transcript of Plea, October 10, 1977 (R p 14).

Exception No. 4 is to that part of finding (13) indicated with brackets as follows:

(13) [That later on the same day, October 10, 1977, in the afternoon session, Petitioner and his attorney, Mr. Stephen H. Nimocks, and Mr. Gregory for the State appeared before Judge Clark again and tendered to the Court a plea of guilty. That Judge Clark personally examined Petitioner with regard to the questions appearing on the Transcript of Plea. That the Petitioner stated to Judge Clark that he was, in fact, guilty and that at no time during that session did he state to Judge Clark that he was not guilty. That this transcript was signed by Petitioner and sworn to by Petitioner in the presence of Mrs. Linda Nichols, but that it was not signed by Judge Clark.]

This finding is supported by the transcript of plea itself (R p 16) and the testimony of Mrs. Kerik (T pp 241-243).

Exception No. 6 is to that part of finding (15) "that evidence was presented by the Petitioner on October 31, 1977, and thereafter that prayer for judgment was continued until later in that session, to wit, until November 4, 1977." This finding is supported by the "Judgment or other Disposition" entered by Judge Clark on 31 October 1977 (R p 37).

Exception No. 7 is to that part of finding (20) "that in that letter Petitioner did not express any dissatisfaction with the legal services he had received from Nimocks." Finding of fact (20) relates to a letter which defendant allegedly wrote Nimocks from prison on or about 17 November 1977. This letter was introduced into evidence as state's exhibit 4 and fully supports the finding.

Exception No. 8 is to all of finding (21) which is as follows:

(21) That the statements of Petitioner and the co-defendants, Hopple and Johnson, and the statement of the victim, Curtis Hammonds when all taken together create at least a reasonable inference that if anyone attempted to help the victim, Hammonds, it was Michael Len Hopple and not the Petitioner. That all of these statements when taken together and Nimocks' conversations with the Investigating Officers, Byrd and Conerly, give Stephen H. Nimocks a reasonable basis on which to advise the Petitioner that he should, in fact, plead guilty.

This finding is supported by the statements which defendant, the codefendants and the victim gave the police very soon after the robbery (defendant's exhibit 1, state's exhibits 1, 2 and 3) and the testimony of Nimocks and Billy Byrd (T pp 256, 225-227).

Exceptions Nos. 9 and 10 are to findings (22) and (23) which are:

(22) That at no time did Stephen H. Nimocks or anyone else advise Petitioner that if he entered a plea of guilty he would be put on probation or that he would probably be put on probation, and that at no time did Stephen H. Nimocks or anyone else advise Petitioner that if he entered a plea of guilty he would be allowed to return to his unit at Fort Bragg.

(23) That Petitioner's own statement to the officers indicated that he was the individual in the right front

passengers seat of the automobile and that the victim, Curtis Hammond's statement to the officers indicated that the man in the right front passenger seat pulled a knife and participated actively in the robbery. That the statement given by Curtis Hammond does not exculpate Petitioner as alleged in the Motion for Appropriate Relief.

These findings are supported by the affidavit (R pp 48-50) and testimony of Nimocks (T p 266) and the statement of defendant (defendant's exhibit 1) and the statement of Curtis Hammond, the victim (state's exhibit 3).

Exception No. 11 is to finding (26) "that neither Stephen H. Nimocks nor anyone else made any promises to the Petitioner or threatened him in any way to cause him to enter the plea of guilty in this case." This finding is supported by the affidavits (R pp 48-54) and testimony of Nimocks and Gregory (T pp 268, 130-131).

Exception No. 12 is to finding (27) which is as follows:

(27) That he entered the plea of guilty both on the afternoon of October 10, 1977 and on November 4, 1977, of his own free will, voluntarily, knowingly and understanding what he was doing. And that neither Stephen H. Nimocks nor anyone else told the Petitioner to give false answers to the Court in order to have the Court accept his plea in this case.

This finding is supported by the second transcript of plea (R p 16), the third transcript of plea (R p 19), the affidavits (R pp 48, 50) of Nimocks and Gregory, the testimony of Nimocks (T pp 268-269), the testimony of Gregory (T pp 130-131), the testimony of Mrs. Kerik (T pp 239-247) and the testimony of Judge Clark (T pp 206-219).

Exception No. 13 is to finding (28) "that the Petitioner was satisfied with his counsel, Stephen H. Nimocks both on the afternoon of October 10, 1977 and on November 4, 1977." This finding is supported by defendant's sworn answers on question 4 of each of the two transcripts (R pp 16, 19).

Exceptions Nos. 14 and 15 are to findings (29) and (30) "that Stephen H. Nimocks did not coerce or attempt to coerce the Petitioner into pleading guilty", and "that Petitioner at no time indicated to Stephen H. Nimocks that he desired in fact to plead

not guilty and to exercise his right to a trial by jury." These findings are supported by the second and third transcripts of plea (R pp 16, 19), the testimony of Nimocks (T p 268), the affidavit of Nimocks (R p 48), the testimony of defendant (T pp 61-93) and the second and third transcripts of plea (R pp 16, 19).

Exception No. 16 is to finding (31) which is as follows:

(31) That Stephen H. Nimocks did not advise Petitioner that he was guilty of armed robbery merely because he was at the scene with the other participants, but that his advice to the Petitioner to plead guilty was based upon the statements of all co-defendants, the statement of Petitioner himself, and Nimocks' conversations with the Investigating Officers Byrd and Conerly.

This finding is supported by the statements of defendant, the codefendants and the victim given to police soon after the robbery (defendant's exhibit 1, state's exhibits 1, 2 and 3), the testimony of Nimocks (T pp 252-256) and the testimony of Deputy Sheriff Byrd (T pp 220-227).

Exception No. 17 is to finding (35) which is that Nimocks and defendant agreed that defendant would plead guilty to one count of armed robbery and that the fee of $1,500.00 agreed upon by defendant and Nimocks was based upon a plea of guilty. This finding is supported by the affidavit of Nimocks (R p 48), the testimony of Nimocks (T p 254) and the testimony of defendant (T pp 22-23).

Exception No. 18 is to that part of finding (36) which is "that the Judgment and Commitment entered by Judge Clark on November 4, 1977 was based upon the plea of guilty entered by the Petitioner on November 4, 1977 although the Petitioner had on the afternoon of October 10, 1977 entered a plea of guilty freely, voluntarily, and knowingly understanding what he was doing." This finding is supported by the second transcript of plea (R p 16) and the third transcript of plea (R p 19).

While the evidence presented to Judge Lee was conflicting, and defendant gave testimony contrary to that given by Attorney Nimocks, the findings of fact are fully supported by the evidence and must be upheld on appeal. *Branch v. State, supra; State v. Blackmon, supra;* and *State v. Bullock, supra.*

## II.

Defendant's remaining exceptions Nos. 19, 20, 21, 22 and 23 relate to Judge Lee's conclusions of law which are as follows:

(1) That the decision of Stephen H. Nimocks, Attorney at Law, to advise the Petitioner to plead guilty and to in fact enter a plea of guilty on his behalf was a decision in which Petitioner concurred at the time the plea was tendered to the Court on the afternoon of October 10, 1977, and again on November 4, 1977, and this decision on the part of Stephen H. Nimocks was an informed professional deliberation and judgment, and it was not based on neglect or ignorance.

(2) That Stephen H. Nimocks' representation of and advice to this Petitioner was substantially above the range of competence demanded of attorneys in criminal cases.

(3) That Petitioner was not denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.

(4) That the guilty plea tendered to the Court by the Petitioner on the afternoon of October 10, 1977, and again on November 4, 1977, which was finally accepted and ordered filed by the Honorable Giles R. Clark on November 4, 1977, was entered by the Petitioner voluntarily, of his own free will, understandingly, without any promises or threats being made to him by Stephen H. Nimocks or by anyone else, and that there was a factual basis for the acceptance of said plea by the Court, and that no one advised Petitioner to give false answers to Judge Clark in order to have him accept the plea in the case and that Petitioner did not in fact give false answers to the Court in order to have judge Clark accept the plea in the case.

(5) That the Petitioner is not entitled to relief for the failure of the State to preserve a verbatim transcript of the proceedings on October 10, 1977, October 14, 1977, and on October 31, 1977, for the reason that there are sufficient witnesses who recall the events of those dates to enable the Court to make findings of material fact.

Our inquiry now is whether the findings of fact support the conclusions of law. We hold that they do. While we will not take the conclusions of law *seriatim* and specify the particular findings of fact which support them, we will comment on those which defendant appears to criticize specifically.

The court's conclusion that the decision on the part of Nimocks to advise defendant to plead guilty "was an informed professional deliberation and judgment, and it was not based on neglect or ignorance" is fully supported by the findings.

Defendant did not except to finding (32) in which the court found that Nimocks was graduated from the Wake Forest Law School in 1951, that he had been engaged continuously since that time in the general practice of law in Fayetteville, and that the larger part of his practice had been criminal law.

The court further found that it was only after Nimocks had conferred with defendant, talked with the investigating officers, read the statements which defendant, his codefendants and the victim gave to the police soon after their arrest, and talked with other people, that he advised defendant to plead guilty. Clearly Nimocks was justified in concluding that although defendant was contending that he did not participate in the robbery and tried to help the victim, it would be difficult, if not impossible, to persuade a jury to believe that contention in the face of contrary testimony by the victim himself and defendant's friend Hopple, one of the codefendants.

With respect to conclusions of law (2) and (3), defendant argues that the test of effective assistance of counsel is "that assistance within the range of competence demanded of attorneys in criminal cases", citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980); *McMann v. Richardson*, 397 U.S. 759 (1970); *Marzullo v. Maryland*, 561 F. 2d 540 (4th Cir. 1977). It is clear that Judge Lee applied this test and we think the findings of fact justify the application. As to conclusion of law (4), the findings of fact more than support it.

Conclusion of law (5) is in response to defendant's contention set out in his motion for appropriate relief "that no verbatim record of the proceedings at which defendant may have entered a plea of guilty was preserved." G.S. 15A-1026 provides:

A verbatim record of the proceedings at which the defendant enters a plea of guilty or no contest and of any preliminary consideration of a plea arrangement by the judge pursuant to G.S. 15A-1021(c) must be made and preserved. This record must include the judge's advice to the defendant, and his inquiries of the defendant, defense counsel, and the prosecutor, and any responses. If the plea arrangement has been reduced to writing, it must be made a part of the record; otherwise the judge must require that the terms of the arrangement be stated for the record and that the assent of the defendant, his counsel, and the prosecutor be recorded.

While the trial court did not strictly comply with the quoted statute in making and preserving a verbatim record of the proceedings at which defendant pled guilty, we agree with Judge Lee's conclusion that defendant is not entitled to relief because of this omission. In addition to witnesses being able to recall the events in question, and the availability of the written transcripts of plea, Judge Clark made and preserved copious notes which aided him in refreshing his recollection.

### III.

As indicated above, defendant groups his 27 assignments of error, based on 23 exceptions, under one contention that his guilty plea "was unintelligent, unknowing, involuntary and the result of ineffective assistance of counsel." With very little specificity as to which findings of fact are not supported by the evidence, and which conclusions of law are not supported by the findings, the gist of defendant's argument is that Judge Lee saw fit to find facts based on evidence other than testimony given by defendant and certain of his witnesses.

We have before us in this case rulings from two of our ablest trial judges. Judge Clark has served with distinction as the resident judge of the Thirteenth District since February of 1975. Prior to that time he served more than six years as a judge of the district court. The record in this case clearly discloses that he did not accept defendant's plea of guilty until after he was thoroughly convinced, following at least three hearings, that defendant was satisfied with his counsel and that the guilty plea was the informed choice of defendant and was made freely, voluntarily and understandingly.

Judge Lee has served ably as a resident judge of the Fourteenth District since January of 1975. Prior to that time he served as a district court judge for nine years. The record in this case indicates that he patiently conducted the hearing on defendant's motion for appropriate relief during the week of 12 January 1981; that he took the matter under advisement until 24 March 1981; and that he then, after having the benefit of the transcript of the hearing, made his findings of fact, conclusions of law and denied defendant's motion.

We conclude that the findings of fact are supported by the evidence, that the conclusions of law are supported by the findings of fact, and that the order denying defendant's motion for appropriate relief is supported by the findings of fact and the conclusions of law.

Affirmed.

Justice EXUM dissenting.

I disagree with the majority's conclusion that Judge Lee's finding No. 31 is supported by the evidence. This finding is crucial to conclusion No. 1 that Mr. Nimocks' advice to defendant to plead guilty was "the result of informed professional deliberation and judgment, and . . . not based on neglect or ignorance" and to conclusion No. 3 that defendant was not denied effective assistance of counsel. Finding No. 31 is:

> (31) That Stephen H. Nimocks did not advise Petitioner that he was guilty of armed robbery merely because he was at the scene with the other participants, but that his advice to the Petitioner to plead guilty was based upon the statements of all co-defendants, the statement of Petitioner himself, and Nimocks' conversations with the Investigating Officers Byrd and Conerly.

The majority asserts that this finding is supported by the statements of defendant's companions, the robbery victim, and the testimony of Mr. Nimocks and Officer Byrd. Neither the cited evidence nor any other in the record supports this finding; in fact, all of the evidence is contrary to the finding. On the basis of the uncontradicted evidence, most of which comes from the testimony

State v. Stevens

of Mr. Nimocks himself, defendant is entitled to the relief he seeks.

As the majority correctly notes, defendant at all times contended to Mr. Nimocks that he did not participate in the robbery and actually tried to help the victim. Defendant said he was merely present at the scene of the robbery. It is undisputed in this record that this has been defendant's consistent and unaltered position since he first gave a statement to investigating detectives, Bob Conerly and Billy Byrd. His first statement was made on 11 September 1977, several days after his arrest on the charge of robbing Hammond. According to this statement, offered as defendant's Exhibit 1, defendant was riding with his companions Hopple, Johnson, and Bralick, when they picked up Hammond, a hitchhiker. After riding around awhile, Johnson drove the car into some woods and stopped. Defendant got out of the car "and went to the bathroom." When defendant turned around, his companions were robbing Hammond. Defendant asked them to leave Hammond alone. They refused, continued to rob Hammond and then left in the car, abandoning defendant and Hammond. Subsequently, his companions returned to pick defendant up. Shortly after the incident and before they could return home, defendant and his companions were arrested for the robbery.

According to Mr. Nimocks' own testimony, the following transpired with regard to his representation of defendant: He first visited defendant in jail on 14 September 1977. The purpose of this first visit was to determine whether Nimocks would represent defendant, what defendant's plea would be, and Mr. Nimocks' fee. (T p 253) Mr. Nimocks was not sure whether at that time he had seen defendant's statement to Detectives Conerly and Byrd. (T p 253) He did see a copy of this statement shortly after his first conversation with defendant in the jail. (T p 253) But it was at this first conversation that it was determined that defendant would enter a plea of guilty and Mr. Nimocks' fee for entering the plea would be $1500. (T p 254) Mr. Nimocks stated that what defendant said about his participation in the robbery at this first conversation in the jail was consistent with defendant's statement earlier given to Officers Byrd and Conerly. (T p 341) Mr. Nimocks then advised defendant that he was "technically guilty and that he should plead guilty." (T p 331) This advice, according to Nimocks, "was based on what [defendant] told me his participa-

tion was in the crime, primarily." (T p 331) On 16 September, in an effort to get defendant's bond reduced, Mr. Nimocks prepared an application for writ of habeas corpus (T p 263).[1] The application, which was primarily directed at getting defendant's bond reduced, recited:

> *That your petitioner is advised by self-retained counsel that he is technically guilty of one count of armed robbery and that it is his desire to enter a plea of guilty thereto;*

> That your petitioner has volunteered and desires to testify in behalf of the State of North Carolina and that he will truthfully testify in behalf of the State as to all facts and matters surrounding the charges which have been brought against him;

> That petitioner has made a confession to Officers Conerly and Byrd and that said confession was made truthfully and voluntarily without any threat or promise of reward to your petitioner . . . . [Emphases supplied.]

At the hearing on defendant's application for habeas corpus conducted on 19 September 1977, Mr. Nimocks examined Detectives Byrd and Conerly. Detective Byrd testified that he felt defendant had told the truth in his 11 September 1977 statement and that defendant's statement had helped in the solution of other crimes that had not then been solved. (Habeas Corpus Proceeding, p 18; T p 342) Detective Conerly testified that defendant had stated "[t]hat he was merely a passenger in the vehicle, didn't have any idea what was going down, that he had attempted to dissuade the others from doing any harm to Mr. Hammond." (Habeas Corpus Proceeding, p 35) Detective Conerly also testified that defendant's statement regarding defendant's own involvement in the crime "was completely truthful" but "did leave out some information which involved a codefendant and a former hometown friend of his." (Habeas Corpus Proceeding, pp 38-39)

It is clear from the above undisputed facts that Mr. Nimocks gave defendant unsound legal advice based upon Mr. Nimocks' erroneous understanding of the law. Under defendant's version of

---

1. The record clearly shows that Mr. Nimocks was the author of the application, T p 317, although his partner actually signed it.

the incident, corroborated by defendant's pretrial statement to Detectives Byrd and Conerly, Nimocks' own conversations with these officers, and his examination of them at the habeas corpus proceeding, defendant was not guilty of the crime charged. He was merely present when the crime occurred. Mere presence at the scene of a crime does not make one guilty of that crime, technically or otherwise. *See State v. Haywood*, 295 N.C. 709, 717-18, 249 S.E. 2d 429, 434 (1978); *State v. Aycoth and Shadrick*, 272 N.C. 48, 157 S.E. 2d 655 (1967). Yet Mr. Nimocks advised defendant that he was "technically guilty" of robbery even under his own version of the incident. There is no better documentation of Mr. Nimocks' erroneous conclusion than the application for habeas corpus which he prepared and which states that defendant had "made a confession to Officers Conerly and Byrd." In fact and in law, defendant, contrary to Mr. Nimocks' opinion, had made no confession; he had made an exculpatory statement.

Although under defendant's version of the incident defendant was not guilty, as far as Mr. Nimocks had advised him defendant *had no defense to the charge.* Under either the state's version or his own, he was, according to his lawyer, guilty. A guilty plea made under this kind of legal advice is not knowingly and understandingly made. It is also the product of ineffective assistance of counsel.

Judge Lee's finding No. 31 that Mr. Nimocks "did not advise [defendant] that he was guilty of armed robbery merely because he was at the scene with the other participants" is simply not supported by the evidence. All of the evidence, including that of Mr. Nimocks, is that Mr. Nimocks gave precisely that advice. This advice vitiates defendant's plea.

It is true that sometime before defendant entered his plea of guilty, Mr. Nimocks looked at the pretrial statements made by Hopple, Johnson and Hammond, the victim, all of which inculpated defendant in the robbery. Consideration .of these statements might have caused an attorney to advise defendant to plead guilty, even if the attorney recognized that defendant's own version of the incident constituted a good defense. The seriousness of the offense with which defendant was charged, as well as the credibility (if indeed it was credible) of potential testimony against him, may have made a guilty plea the most pru-

dent alternative. But any plea of guilty must be based on "the informed choice of the defendant" and "freely, voluntarily, and understandingly" given.[2] Here, according to Mr. Nimocks' own testimony, defendant's plea was based on erroneous legal advice that even under his own version of the events he was technically guilty of armed robbery. The plea, then, was not the result of an informed choice to forego any defense defendant had to obtain potential benefits from pleading guilty. Nor was Mr. Nimocks' advice to plead guilty "based upon the statements of all codefendants, the statement of Petitioner himself, and Nimocks' conversations with the Investigating Officers Byrd and Conerly."[3] Mr. Nimocks' counsel that defendant should plead guilty was, by his own testimony, the product of his erroneous assessment of the legal significance of defendant's own statement, not a careful weighing of defendant's statement against the statements of others.

Since finding No. 31, which is crucial to Judge Lee's ultimate conclusions of law, is not supported by and is contrary to all of the evidence in the case, and since all of the evidence demonstrates that defendant's plea could not have been knowingly and understandingly made and was the product of ineffective assistance of counsel, my vote is to vacate the plea and remand the matter to Cumberland Superior Court for trial.

Justices CARLTON and MITCHELL join in this dissent.

---

2. Judge Clark found that defendant's plea was "the informed choice of the defendant" and was "made freely, voluntarily, and understandingly." Judge Clark carefully questioned defendant before making this finding and accepting defendant's plea. But defendant, unschooled in the law, was acting on Mr. Nimocks' erroneous explanation of the applicable law. In answering Judge Clark's questions defendant could not have known the advice he had been given was incorrect. Likewise, Judge Clark could not have known that defendant's answers were tainted by such advice.

3. That the inculpatory statements of defendant's companions and the victim are in the record is no evidence in itself that Mr. Nimocks' advice to defendant to plead guilty was based on them.