BRYANT, Judge.
Where the trial court erred in concluding that defendant’s sentence of life in prison with the possibility of parole was a violation of the Eighth Amendment, we reverse and remand the trial court order modifying defendant’s original sentence.
On 7 May 1973, a complaint and warrant for arrest was issued against seventeen-year-old defendant Larry Connell Stubbs in Cumberland County.
[The complainant alleged that on that day, defendant] unlawfully, willfully, and feloniously and burglariously [sic] did break and enter, at or about the hour of two o’clock AM in the night... the dwelling house of [the victim] located at 6697 Amanda Circle, Fayetteville, N.C. and then and there actually occupied by the said [victim], with the felonious intent [defendant], [sic] the goods and chattels of the said [victim], in the said dwelling house then and there being, then and there feloniously and burglariously [sic] to steal and carry away, said items stolen and carried away, one table lamp, one General Electric Record Player; one Magnus Electric Organ; One Portable General Electric 19” television set; . . . one man’s suit color black, the personal property of [the victim], and valued at $394.00.
In addition to first-degree burglary and felonious larceny, defendant was charged with and later indicted on the charge of rape. On 6 August 1973, defendant pled guilty to second-degree burglary and assault with intent to commit rape. The State dismissed the charge of felonious larceny.
*685 On the charge of second-degree burglary, the trial court accepted defendant’s plea, entered judgment, and sentenced defendant to an active term for “his natural life.”[1] On the charge of assault with intent to commit rape, the trial court sentenced defendant to an active term of fifteen years to run concurrently with his life sentence.
On 11 May 2011, defendant filed a pro se motion for appropriate relief (MAR) in the Cumberland County Superior Court asking that his sentence of life in prison on the charge of second-degree burglary be set aside, that he be resentenced, and after awarding time served as credit toward the new sentence, that he be released from prison. As a statutory basis for the relief requested, defendant cited N.C. Gen. Stat. § 15A-1415(b)(7), “Grounds for appropriate relief which may be asserted by defendant after verdict; limitation as to time”, and G.S. § 15A-1340.17, “Punishment limits for each class of offense and prior record level” pursuant to the Structured Sentencing Act codified at §§ 15A-1340.10, el seq. Defendant’s contention was that his original sentence was grossly disproportionate to the maximum sentence he could receive for the same crime if sentenced today. Sentenced to an active term for his natural life for second-degree burglary, defendant maintained that if he had been sentenced under the Structured Sentencing Act, effective 1 October 1994, his term would have been between twenty-nine and forty-four months. “Because there has been a ‘significant change’ in the law,” defendant asserted that his life sentence should now be considered cruel and unusual punishment. Defendant petitioned the Superior Court to resentence him based on “evolving standards of decency under the Eighth Amendment of the United States Constitution which prohibits cruel and unusual punishment being inflicted[,] as does [] Article I, section 27 of the North Carolina Constitution.” Defendant also petitioned to proceed in forma pauperis.
On 10 October 2011, Senior Resident Superior Court Judge Gregory A. Weeks filed an order in which he concluded that defendant’s “Motion for Appropriate Relief [was] not frivolous, [had] merit, that a summary disposition [was] inappropriate, and that a hearing [was] necessary.” The court appointed the Office of North Carolina Prisoner Legal Services to represent defendant.
*686 On 13 August 2012, the State filed its Memorandum Opposing Defendant’s Motion for Appropriate Relief. In its memorandum, the State addressed defendant’s motion as a request for retroactive application of the Structured Sentencing Act and a challenge to his life sentence pursuant to the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution. The State maintained that defendant was not entitled to the relief sought: the Structured Sentencing Act was applicable to criminal offenses occurring on or after 1 October 1994; and “[t]o the extent that [] Defendant’s argument challenges his sentence pursuant to the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution,” Eighth Amendment jurisprudence proscribes a different analysis than the one proposed by defendant. The State further asserted that our State Appellate Courts have rejected arguments similar to the one defendant presented.
On 15 August 2012, defendant, through appointed counsel, filed a Memorandum Supporting Defendant’s Motion for Appropriate Relief. Acknowledging our North Carolina Supreme Court’s holding which declined to retroactively apply the sentencing provisions codified under the Structured Sentencing Act, see State v. Whitehead, 365 N.C. 444, 722 S.E.2d 492 (2012), defendant asserted that he was entitled to relief “because his sentence of Life Imprisonment for his conviction of Second Degree Burglary in 1973 is unconstitutionally excessive under evolving standards of decency and the Eighth Amendment to the United States Constitution . . . and Article I, Section 27 of the North Carolina Constitution.” Defendant asserted that “[t]o gauge evolving standards of decency, the [United States] Supreme Court looks to legislative changes and enactments.” Defendant also asserted that “[t]he [Structured Sentencing Act] is the most current expression of North Carolina’s assessment of appropriate and humane sentences, and [] is an objective index of sentence proportionality for Eighth Amendment analysis purposes.” “As of today, Defendant has served nearly forty years in prison for his Second Degree Burglary conviction. This is nearly ten times the length of time that any defendant could be ordered to serve today.” Defendant contended that his sentence was excessive, that it violated the United States Constitution and the North Carolina Constitution “making it necessary to vacate Defendant’s life sentence and to resentence him to a term of years that is not disproportionate, cruel, or unusual.”
Following a 13 August 2012 hearing, the trial court on 5 December 2012 entered an order in which it found that on 6 August 1973, defendant *687 pled guilty to second-degree burglary and assault -with intent to commit rape. Defendant had been sentenced to life in prison for second-degree burglary along with a concurrent sentence of fifteen years imprisonment for assault with intent to commit rape. Defendant completed his sentence for assault with intent to commit rape in 1983 and was currently incarcerated solely for his second-degree burglary conviction. “As of 30 November 2012, [defendant] has been in the custody of the North Carolina Department of Public Safety for this crime for more than thirty-six years.” The court found that defendant was paroled in December 2008 and that while on parole, he was charged with and convicted of driving while impaired. Subsequent to his conviction, defendant’s parole status was revoked, and he was returned to incarceration. The trial court concluded that under “evolving standards, [defendant’s] sentence violated the Eighth Amendment and is invalid as a matter of law.” The trial court granted defendant’s motion for appropriate relief and vacated the judgment entered 6 August 1973 as to the second-degree burglary conviction, resentencing defendant to a term of thirty years. Defendant was given credit for 13,652 days spent in confinement. The trial court further ordered that the North Carolina Department of Public Safety Division of Adult Correction release defendant immediately.
The State filed with this Court petitions for a writ of certiorari to review the 5 December 2012 trial court order and a writ of supersedeas to stay imposition of the trial court’s order pending appeal. Both petitions were granted.[2]
On appeal, the State brings forth the issue of whether the Superior Court erred by ruling that defendant’s 1973 sentence of life imprisonment *688 with the possibility of parole for a second-degree burglary conviction is now in violation of the Eighth Amendment to the United States Constitution, vacating defendant’s 1973 judgment, and resentencing him. The State argues on appeal that (A) the trial court lacked jurisdiction over the original judgment and (B) that it incorrectly interpreted the precedent of the Supreme Court of the United States.
“Our review of a trial court’s ruling on a defendant’s MAR is ‘whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.’ ” State v. Peterson, _ N.C. App. _, _, _ S.E.2d _, _, (No. COA12-1047) (2013) (quoting State v. Stevens, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982)).

A

The State argues that the trial court lacked jurisdiction over the original judgment. Specifically, the State contends that defendant’s motion for appropriate relief was made pursuant to N.C. Gen. Stat. § 15A-1415 but that no provision of section 15A-1415 granted the trial court jurisdiction to modify the original sentence. We disagree.
A trial court loses jurisdiction to modify a defendant’s sentence, “subject to limited exceptions, after the adjournment of the session of court in which [the] defendant receive[s] this sentence^] [although a trial court may properly modify a sentence after the trial term upon submission of a [Motion for Appropriate Relief (MAR)][.]” Whitehead, 365 N.C. at 448, 722 S.E.2d at 495 (citations omitted). Section 15A-1415 of the North Carolina General Statutes lists “the only grounds which the defendant may assert by a motion for appropriate relief made more than 10 days after entry of judgment[.]” N.C. Gen. Stat. § 15A-1415(b) (2011).
At the 13 August 2012 hearing on defendant’s MAR, defendant contended that he was entitled to relief pursuant to N.C. Gen. Stat. § 15A-1415(b)(8). In its 5 December 2012 order, the trial court concluded that its authority over the 6 August 1973 judgment was allowed pursuant to N.C.G.S. § 15A-1415(b)(4) & (b)(8).
Pursuant to General Statutes, section 15A-1415, a defendant may assert by MAR made more than ten days after entry of judgment the following grounds:
(4) The defendant was convicted or sentenced under a statute that was in violation of the Constitution of the United States or the Constitution of North Carolina.
*689 (8) The sentence imposed was unauthorized at the time imposed, contained a type of sentence disposition or a term of imprisonment not authorized for the particular class of offense and prior record or conviction level was illegally imposed, or is otherwise invalid as a matter of law.
N.C.G.S. § 15A-1415(b)(4) & (b)(8).
The gravamen of the argument presented in defendant’s MAR submitted to the trial court is that because “his sentence of Life Imprisonment for his conviction of Second Degree Burglary in 1973 is unconstitutionally excessive under evolving standards of decency and the Eighth Amendment to the United States Constitution . .. and Article I, Section 27 of the North Carolina Constitution,” the trial court had jurisdiction over the 6 August 1973 judgment to consider whether defendant’s sentence was “invalid as a matter of law.” N.C.G.S. § 15A-1415(b)(8); see also N.C.G.S. § 15A-1415(b)(4). We agree and therefore, overrule the State’s challenge to the trial court’s jurisdiction.

B

The State further contends that the trial court misapplied United States Supreme Court precedent, applying the wrong test to determine whether an Eighth Amendment violation has occurred. We agree in part.
The Eighth Amendment to the United States Constitution states that “[e]xcessive bail shall not be required, nor excessive lines imposed, nor cruel and unusual punishments inflictedf,]” U.S. Const, amend. VIII, and is made applicable to the States by the Fourteenth Amendment, id. amend. XIV. The Constitution of North Carolina similarly states, “[e]xcessive bail shall not be required, nor excessive lines imposed, nor cruel or unusual punishments inflicted.” N.C. Const, art. I, § 27. Despite the difference between the two constitutions, one prohibiting “cruel and unusual punishments,” the other “cruel or unusual punishments,” “[our North Carolina Supreme Court] historically has analyzed cruel and/or unusual punishment claims by criminal defendants the same under both the federal and state Constitutions.” State v. Green, 348 N.C. 588, 603, 502 S.E.2d 819, 828 (1998) (citations omitted), superseded by statute on other grounds as stated in In re J.L.W., 136 N.C. App. 596, 525 S.E.2d 500 (2000).
“The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.... [T]he words of the Amendment are not *690 precise, and [] their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.” Trop v. Dulles, 356 U.S. 86, 100-01, 2 L. Ed. 2d 630, 642 (1958) (citation omitted). “The [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency..., against which we must evaluate penal measures.” Estelle v. Gamble, 429 U.S. 97, 102-03, 50 L. Ed. 2d 251, 259 (1976) (citation and quotations omitted).
In Estelle v. Gamble, the United States Supreme Court observed that when the Court initially applied the Eighth Amendment, the challenged punishments regarded methods of execution. Id. at 102, 50 L. Ed. 2d at 258. However, “the Amendment proscribes more than physically barbarous punishments.” Id. at 102, 50 L. Ed. 2d 259.
To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society. This is because the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society change.
Graham v. Florida, 560 U.S. _, _, 176 L. Ed. 2d 825, 835 (2010) (citations, quotations, and bracket omitted).
[T]he Eighth Amendment’s protection against excessive. or cruel and unusual punishments flows from the basic precept of justice that punishment for a crime should be graduated and proportioned to the offense. Whether this requirement has been fulfilled is determined not by the standards that prevailed when the Eighth Amendment was adopted in 1791 but by the norms that currently prevail. The Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society.
Kennedy v. Louisiana, 554 U.S. 407, _, 171 L. Ed. 2d 525, 538 (citations and quotations omitted) opinion modified on denial of reh’g, 554 U.S. 945, 171 L. Ed. 2d 932 (2008).
The concept of proportionality is central to the Eighth Amendment....
The Court’s cases addressing the proportionality of sentences fall within two general classifications. The first *691 involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.
Graham, 560 U.S. at_, 176 L. Ed. 2d at 835-36.
As to the first classification, in which the Court considers whether a term-of-years sentence is unconstitutionally excessive given the circumstances of a case, the Court noted that “it has been difficult for [challengers] to establish alack of proportionality. ”/d. at_., 176 L.Ed. 2d at 836. Referring to Harmelin v. Michigan, 501 U.S. 957, 115 L. Ed. 2d 836 (1991), as a leading case on the review of Eighth Amendment challenges to term-of-years sentences as disproportionate, Justice Kennedy delivering the opinion of the Graham Court acknowledged his concurring opinion in Harmelin: “[T]he Eighth Amendment contains a ‘narrow proportionality principle,’ that ‘does not require strict proportionality between crime and sentence’ but rather ‘forbids only extreme sentences that are “grossly disproportionate” to the crime.’ ” Graham, 560 U.S. at _, 176 L. Ed. 2d at 836 (quoting Harmelin, 501 U.S. at 997, 1000-1001, 115 L. Ed. 2d at 836 (Kennedy, J., concurring in part and concurring in judgment)). Accord Rummel v. Estelle, 445 U.S. 263, 288, 63 L. Ed. 2d 382 (1980) (Powell, J., dissenting (The scope of the Cruel and Unusual Punishments Clause extends ... to punishments that are grossly disproportionate. Disproportionality analysis . . . focuses on whether, a person deserves such punishment .... A statute that levied a mandatory life sentence for overtime parking might well deter vehicular lawlessness, but it would offend our felt sense of justice. The Court concedes today that the principle of disproportionality plays a role in the review of sentences imposing the death penalty, but suggests that the principle may be less applicable when a noncapital sentence is challenged.”)).
In Harmelin, 501 U.S. 957, 115 L. Ed. 2d 836, the defendant challenged his sentence of life in prison without possibility of parole on the grounds that it was “significantly” disproportionate to his crime, possession of 650 or more grams of cocaine. The defendant further argued that because the sentence was mandatory upon conviction, it amounted to cruel and unusual punishment as it precluded consideration of individual mitigating circumstances. Id. at 961,115 L. Ed. 2d at 843 n.l. In an opinion delivered by Justice Scalia, a majority of the Court held that the sentence was not cruel and unusual punishment solely because it was mandatory upon conviction. In addressing the defendant’s alternative *692 argument, that his sentence of life in prison without possibility of parole was significantly disproportionate to his crime of possessing 650 or more grams of cocaine, a majority of the Court concluded that the defendant’s sentence did not run afoul of the Eighth Amendment; however, the Court revealed varied views as to whether the Eighth Amendment includes a protection against disproportionate sentencing and if so, to what extent. See also Ewing v. California, 538 U.S. _, 155 L. Ed. 2d 108 (2003) (holding that the defendant’s sentence of twenty-five years to life for felony grand theft under California’s “three strikes and you’re out” law did not violate the Eighth Amendment’s prohibition on cruel and unusual punishments). Cf. Solem v. Helm, 463 U.S. 277, 77 L. Ed. 2d 637 (1983) (holding that South Dakota’s sentence of life without possibility of parole for uttering a “no account” check after the defendant had previously been convicted of six non-violent felonies was disproportionate to his crime and prohibited by the Eighth Amendment).
We return our attention to Graham v. Florida which sets out the second classification of Eighth Amendment proportionality challenges as “implementfing] the proportionality standard by certain categorical restrictions on the death penalty.” Graham, 560 U.S. at._, 176 L. Ed. 2d at 836. But, rather than a challenge to a capital sentence, the Graham Court was presented with a categorical challenge to a term-of-years sentence: whether the imposition of life in prison without the possibility of parole for a nonhomicide crime committed by a sixteen-year-old juvenile offender violated the Eighth Amendment. In its reasoning, the Court made the following observation:
[L]ife -without parole is the second most severe penalty permitted by law.... [L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences [T]he sentence alters the offender’s life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency — the remote possibility of which does not mitigate the harshness of the sentence.
Id. at_, 176 L. Ed. 2d at 842. The Court concluded that the severity of a sentence imposing life without parole for a person who was a juvenile at the time his nonhomicide offense was committed is a sentencing practice that is cruel and unusual. Id. at_, 176 L. Ed. 2d at 845. However, the Court went on to note that this sentencing preclusion may not lessen the duration of a sentence.
*693 A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give [the] defendant^ . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis . . . that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. . . . The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life.
Id. at_, 176 L. Ed. 2d at 845-46 (emphasis added).
As a means of obtaining release from incarceration, our North Carolina General Assembly has created by statute a Post-Release Supervision and Parole Commission. N.C. Gen. Stat. § 143B-720 (2011). With the exception of those sentenced under the Structured Sentencing Act, the Commission has “authority to grant paroles ... to persons held by virtue of any final order or judgment of any court of this State_” Id. § 143B-720(a). Furthermore, the Commission is to assist the Governor and perform such services as the Governor may require in exercising his executive clemency powers. Id. We note that in State v. Whitehead, 365 N.C. 444, 722 S.E.2d 492 (2012), a case reviewing the retroactive application of a less severe sentencing statute, our Supreme Court also drew attention to the powers of the Post-Release Supervision and Parole Commission.
In2005,2007,2009, and2011, the GeneralAssembly directed the Post-Release Supervision and Parole Commission to determine whether inmates sentenced under previous sentencing standards have served more time in custody than they would have served if they had received the maximum sentence under the SSA. [Defendant’s sentence appears to fall within the purview of this directive.]. . . In addition, wholly independent of the Commission’s grant of authority, the state constitution empowers the Governor to “grant reprieves, commutations, and pardons, after conviction, for all offenses ... upon such conditions as he may think proper.” N.C. Const, art. Ill, § 5(6).
*694 Id. at 448, 722 S.E.2d at 496 n.l (emphasis added).[3]
The Whitehead Court considered atrial court order granting a defendant’s MAR requesting that his life sentence imposed following a guilty plea entered 29 July 1994 and imposed pursuant to the Fair Sentencing Act for a homicide occurring 25 August 1993 be modified by retroactively applying the sentencing provisions of the Structured Sentencing Act applicable to offenses committed on or after 1 October 1994. Id. Vacating and remanding the judgment and order of the trial court, our Supreme Court stated that “[c]rimina! sentences may be invalidated for cognizable legal error demonstrated in appropriate proceedings. But, in the absence of legal error, it is not the role of the judiciary to engage in discretionary sentence reduction.” Id. at 448, 722 S.E.2d at 496.
In the matter before us, we note that on 7 May 1973, the date of the offense for which defendant was charged with committing the offense of second-degree burglary, he was seventeen years old.[4] On 6 August 1973, the date defendant pled guilty to second-degree burglary, defendant was eighteen. Defendant was sentenced to incarceration for “his natural life.” Pursuant to our General Statutes in effect at that time, any prisoner serving a life sentence was eligible to have his case considered for parole after serving ten years of his sentence. N.C.G.S. § 148-58. The record is not clear how often defendant was considered for parole. However, after serving over thirty-five years, defendant was paroled in December 2008. In 2010, defendant was convicted of driving while impaired. He was sentenced and served 120 days in jail. Thereafter, his parole was revoked and his life sentence reinstated.
“[L]ife imprisonment with possibility of parole is [] unique in that it is the third most severe [punishment].” Harmelin, 501 U.S. at 996,115 L. Ed. 2d at 865. Nevertheless, in the body of case law involving those who commit nonhomicide criminal offenses even as juveniles, sentences allowing for the “realistic opportunity to obtain release before the end of [a life] term” do not violate the prohibitions of the Eighth Amendment. Graham, 560 U.S. at_, 176 L. Ed. 2d at 850. Defendant’s sentence *695 allows for the realistic opportunity to obtain release before the end of his life. In fact, defendant was placed on parole in December 2008 prior to his 2010 conviction for the offense of driving while impaired, which led to the revocation of his parole and reinstatement of his life sentence. As our Supreme Court has not indicated a preference for discretionary sentence reduction, see Whitehead, 365 N.C. at 448, 722 S.E.2d at 496 (“[I]t is not the role of the judiciary to engage in discretionary sentence reduction.”), and our General Assembly has directed the Post-Release Supervision and Parole Commission to review matters of proportionality, see N.C.G.S. § 143B-720; Whitehead, 365 N.C. at 449, 722 S.E.2d at 496 n.1, we hold that the trial court erred in concluding defendant’s life sentence violated the prohibitions of the Eighth Amendment to the United States Constitution. See Rummel v. Estelle, 445 U.S. 263, 283-84, 63 L. Ed. 2d 382, 397 (1980) (“Perhaps... time works changes upon the Eighth Amendment, bringing into existence new conditions and purposes. We all, of course, would like to think that we are moving down the road toward human decency. Within the confines of this judicial proceeding, however, we have no way of knowing in which direction that road lies. Penologists themselves have been unable to agree whether sentences should be light or heavy, discretionary or determinate. This uncertainty reinforces our conviction that any nationwide trend toward lighter, discretionary sentences must find its source and its sustaining force in the legislatures, not in the [] courts.” (citations and quotations omitted)). It should be stated that by all accounts based on today’s sentencing standards, defendant’s sentence cannot be viewed as anything but severe. Since 1973 at the age of eighteen, defendant has been incarcerated for all but less than two years. There is no record of an appeal from the 1973 conviction, and the record before us does not provide details of the circumstances which led to defendant’s arrest or the injury to the victim. Regardless, we must address only what is, as opposed to what is not, before us. Upon review of the arguments presented and cases cited, defendant’s outstanding sentence of life in prison with possibility of parole for second-degree burglary, though severe, is not cruel or unusual in the constitutional sense. See Green, 348 N.C. at 603, 502 S.E.2d at 828. Accordingly, we reverse the Superior Court’s 5 December order modifying defendant’s original sentence and remand to the trial court for reinstatement of the original 6 August 1973 judgment and commitment.
Reversed and remanded.
Judge STEPHENS concurs by separate opinion.
Judge DILLON concurs by separate opinion.

. Pursuant to N.C. Gen. Stat. § 148-58, effective in 1973, “Time of eligibility of prisoners to have cases considered,” “any prisoner serving sentence for life shall be eligible [to have their cases considered for parole] when he has served 10 years of his sentence.” N.C. Gen. Stat. § 148-58 (1973) (amended in 1973, effective 1 July 1974, to provide that the period a prisoner sentenced to life imprisonment must serve before being eligible for parole would be changed from ten to twenty years) (repealed 1977).

. We acknowledge with appreciation the responsiveness of the State and defense counsel in providing this Court with memoranda of additional authority regarding a question presented by this Court at oral argument reflecting on our jurisdiction to hear this appeal. We also note that because one panel of this Court has previously decided the jurisdictional issue by granting the State’s petition for a writ of certiorari to hear the appeal, we cannot overrule that decision. N.C.N.B. v. Virginia Carolina Builders, 307 N.C. 563, 567, 299 S.E.2d 629, 631-32 (1983) (“[0]nce a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case. Further, since the power of one panel of the Court of Appeals is equal to and coordinate with that of another, a succeeding panel of that court has no power to review the decision of another panel on the same question in the same case. Thus the second panel in the instant case had no authority to exercise its discretion [against] reviewing the trial court’s order when a preceding panel had earlier decided to the contrary.”). However, separate concurring opinions further address the issue of jurisdiction to hear this appeal.

. While this quote from Whitehead, 365 N.C. at 448, 722 S.E.2d at 496 n.l, is a footnote, we think it is relevant to the instant case wherein defendant, like the defendant in Whitehead, was sentenced under a “previous sentencing standard,” and defendant would have fallen within the directives of the Parole Commission.

. At the time of his offense, North Carolina General Statutes, Chapter 7A, Article 23, entitled “Jurisdiction and Procedure Applicable to Children,” defined “Child” as “any person who has not reached his sixteenth birthday.” N.C. Gen. Stat. § 7A-278(1) (1973). As defendant was seventeen at the time of his offense, he did not come within the aegis of the Chapter 7A, Article 23.