STATE OF NORTH CAROLINA v. AERIC L. WHITEHEAD a/k/a ERIC LAMONT
WHITEHEAD

No. 279PA11

(Filed 9 March 2012)

**Sentencing— Fair Sentencing Act—life sentence—Structured
Sentencing Act—retroactive application—modification of
sentence—erroneous**

The trial court erred in granting defendant's motion for
appropriate relief and modifying defendant's life sentence
imposed under the Fair Sentencing Act by retroactively applying
the Structured Sentencing Act. The sentencing for defendant's
offense was controlled exclusively by the Fair Sentencing Act
and the trial court's order and judgment violated a clear and
unambiguous statute.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an
order and judgment on a motion for appropriate relief dated 17 May
2011 and entered on 1 June 2011 by Judge Quentin T. Sumner in
Superior Court, Nash County. Heard in the Supreme Court on 11
January 2012.

*Roy Cooper, Attorney General, by Elizabeth F. Parsons,
Assistant Attorney General, for petitioner-appellant North
Carolina Department of Correction.*

*Staples S. Hughes, Appellate Defender, by Anne M. Gomez,
Assistant Appellate Defender, for defendant-appellee.*

MARTIN, Justice.

Defendant is presently serving a life sentence for the crime of
second-degree murder. Addressing defendant's 2011 amended motion
for appropriate relief for his 1994 conviction, the Superior Court,
Nash County, modified defendant's life sentence by "retroactively
appl[ying]" the Structured Sentencing Act. The sentencing for defend-
ant's offense, however, is controlled exclusively by the Fair
Sentencing Act. Because the trial court's order and judgment violate
a clear and unambiguous statute, we vacate and remand.

On 29 July 1994, defendant pled guilty to second-degree murder in
Superior Court, Nash County. The date of the offense was 25 August
1993. The trial court imposed a life sentence, the maximum aggravated

term for second-degree murder, which was a Class C felony under the Fair Sentencing Act. N.C.G.S. §§ 14-1.1, 14-17, 15A-1340.4(f) (1993).

The Fair Sentencing Act (FSA), under which defendant was originally sentenced, governs sentencing for felonies committed between 1 July 1981 and 1 October 1994. *Id.* § 15A-1340.1(a) (Cum. Supp. 1981); Crime Control and Prevention Act of 1994, ch. 24, sec. 14, 1993 N.C. Sess. Laws (Extra Sess. 1994) 82, 96. Under the FSA the presumptive range for second-degree murder, a Class C felony, is fifteen years, N.C.G.S. §§ 14-17, 15A-1340.4(f) (1993), and the maximum aggravated term is fifty years or life, *id.* § 14-1.1(a)(3) (1993). The General Assembly enacted the Structured Sentencing Act (SSA) to supersede the FSA for offenses committed *on or after* the SSA's effective date, 1 October 1994. Act of July 24, 1993, ch. 538, 1993 N.C. Sess. Laws 2298 (enacting Structured Sentencing of Persons Convicted of Crimes), *amended* by ch. 24, sec. 14, 1993 N.C. Sess. Laws (Extra Sess. 1994) at 96. In contrast to the FSA, the SSA imposes shorter terms of imprisonment for second-degree murder. N.C.G.S. §§ 14-17, 15A-1340.10, 15A-1340.17 (2009).

On 2 December 2010, defendant filed a motion for appropriate relief (MAR) alleging that his trial counsel rendered ineffective assistance and that his guilty plea was not knowing, voluntary, and intelligent. He filed an amended MAR dated 28 March 2011, alleging that the discrepancy between his actual sentence under the FSA and the sentence he would have received if his crime had been committed after 1 October 1994 under the SSA violates his constitutional rights of due process and liberty. The amended MAR requested modification of defendant's sentence under the SSA.

Following a hearing on defendant's MAR, the Superior Court issued an order on 17 May 2011 concluding that "[t]he sentencing procedure used today in the year 2011 for persons convicted of second degree murder should be retroactively applied to the defendant." In a judgment and commitment dated "05/17/2011 for 07/29/1994," the Superior Court ordered that defendant's life sentence be modified to a term of 157 to 198 months under the SSA. Defendant had already served more than 198 months and, therefore, under the terms of the Superior Court's order, was eligible for immediate and unconditional release from prison.

The Constitution of North Carolina grants this Court "jurisdiction to review upon appeal any decision of the courts below." N.C. Const. art. IV, § 12. In the interest of "ensur[ing] the uniform administration

of North Carolina's criminal statutes," *State v. Ellis*, 361 N.C. 200, 205, 639 S.E.2d 425, 429 (2007), "[t]his Court will not hesitate to exercise its rarely used general supervisory authority when necessary to promote the expeditious administration of justice," *State v. Stanley*, 288 N.C. 19, 26, 215 S.E.2d 589, 594 (1975) (citations omitted). We therefore allowed the State's petition for writ of certiorari to determine whether the Superior Court erred in modifying the sentence it previously had imposed on defendant under the FSA.

Under Article I, Section 6 of the Constitution of North Carolina, "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6; *see also Bacon v. Lee*, 353 N.C. 696, 716, 549 S.E.2d 840, 853-54, *cert. denied*, 533 U.S. 975, 122 S. Ct. 22 (2001); *Jernigan v. State*, 279 N.C. 556, 563-64, 184 S.E.2d 259, 265 (1971). It is axiomatic that the " 'legislature has exclusive power to determine the penalogical system of the [State]. It alone can prescribe the punishment for crime.' " *Jernigan*, 279 N.C. at 564, 184 S.E.2d at 265 (alteration in original) (citations omitted). The function of the judicial branch is " 'to determine the guilt or innocence of the accused, and, if that determination be one of guilt, then to pronounce the punishment or penalty prescribed by law.' " *Id.* at 563-64, 184 S.E.2d at 265 (citation omitted). The executive branch in turn must implement the lawful sentence pursuant to the requirements set forth by the legislature. *Id.* at 564; 184 S.E.2d at 265. Because the legislature has the exclusive authority to prescribe the punishments for crimes, any sentence ordered by the judicial branch and enforced by the executive branch must be within the parameters established by the legislature.

We have previously vacated criminal sentences that were not entered consistently with the appropriate sentencing provisions of the General Statutes. *See, e.g., Ellis*, 361 N.C. 200, 639 S.E.2d 425; *State v. Wall*, 348 N.C. 671, 502 S.E.2d 585 (1998). In *Ellis*, applying the reasoning in *Wall*, we held that the Superior Court erred by ordering that terms of imprisonment for armed robbery run concurrently, despite the clear statutory mandate that the sentences in that case run consecutively. *Ellis*, 361 N.C. at 205-06, 639 S.E.2d at 429. We vacated the Superior Court's order because it was contrary to the law as established in the General Statutes. *Id.* at 206, 639 S.E.2d at 429. Similarly, in *State v. Roberts*, 351 N.C. 325, 523 S.E.2d 417 (2000), we held that a sentence for a term not authorized by the General Statutes was properly corrected in a MAR hearing. *Id.* at 327, 523 S.E.2d at 418. Recognizing the limitations imposed by the state constitution's

express separation of powers clause, we wrote, "Trial courts are required to enter criminal judgments consistent with the [appropriate] provisions of the [General Statutes]." *Id.*

Defendant nonetheless contends that the Superior Court was permitted to enter the modified sentence at the hearing on his MAR. We disagree and hold that the modified sentence contravenes the appropriate sentencing statutes.

The General Assembly clearly and unambiguously provided that the Structured Sentencing Act may not be applied retroactively:

This act becomes effective October 1, 1994, and applies only to offenses occurring on or after that date. Prosecutions for, or sentences based on, offenses occurring before the effective date of this act are not abated or affected by the repeal or amendment in this act of any statute, and the statutes that would be applicable to those prosecutions or sentences but for the provisions of this act remain applicable to those prosecutions or sentences.

Ch. 24, sec. 14, 1993 N.C. Sess. Laws (Extra Sess. 1994) at 96. Trial courts are required to enter criminal judgments in compliance with the sentencing provisions in effect at the time of the offense. *Roberts,* 351 N.C. at 327, 523 S.E.2d at 418. The court here therefore erred in applying the SSA retroactively to the sentence for defendant's crime of second-degree murder—which was committed before 1 October 1994—in violation of the statute's clear and unambiguous mandate. Further, this provision of the SSA directs that sentences for offenses that occurred before the SSA's effective date of 1 October 1994 shall not be affected by the Act. The statutes that applied to pre-SSA sentences remain applicable to those sentences. Accordingly, the FSA remains the applicable law for defendant's sentence.

Defendant asserts that the State waived or invited any error and therefore should not be permitted to complain on appeal. We considered a similar issue in *Wall,* in which, at a hearing on the defendant's MAR, the assistant district attorney consented to the defendant's position that his sentences were to be served concurrently rather than consecutively, contrary to the requirements in the General Statutes. *Wall,* 348 N.C. at 673-74, 502 S.E.2d at 586-87. In that case, the State's consent did not render the illegal sentence unappealable. Rather, because the trial court was required to impose a sentence in accordance with the law, this Court held that the illegal sentence "must, therefore, be vacated." *Id.* at 676, 502 S.E.2d at 588. Just as in *Wall,*

the consent of the assistant district attorney here did not render the illegal sentence unappealable. We therefore must vacate the trial court's 17 May 2011 judgment. *See id.*

Having concluded that defendant is not entitled to resentencing under the SSA, we also note that defendant's MAR provides no appropriate grounds for resentencing under the FSA. The trial court lost jurisdiction to modify defendant's 1994 sentence, subject to limited exceptions, after the adjournment of the session of court in which defendant received this sentence. *See State v. Duncan,* 222 N.C. 11, 13, 21 S.E.2d 822, 824 (1942); Strong's N.C. Index 4th Criminal Law § 1619 (2009). Although a trial court may properly modify a sentence after the trial term upon submission of a MAR, none of the appropriate statutory grounds are present here. *See* N.C.G.S. § 15A-1415(b) (2011) (listing the only grounds which a defendant may assert by a MAR filed more than ten days after entry of judgment). Defendant contends that, based on his MAR, he is entitled to resentencing under the FSA because his original FSA sentence violates the Eighth Amendment. He argues that the difference between his actual sentence under the FSA and the sentence he would have received at the time of his MAR hearing under the SSA violates the Eighth Amendment's proportionality principle. However, a comparison of the gravity of defendant's offense, second-degree murder, with the severity of his sentence, life with the possibility of parole, leads to no inference of gross disproportionality. *See Graham v. Florida,* —— U.S. ——, ——, 130 S. Ct. 2011, 2022 (2010) (instructing that this comparison is a threshold consideration that must be met before comparing a defendant's sentence to the sentences of others for similar offenses). Accordingly, under the allegations of the MAR before this Court, modification of defendant's sentence under the FSA would likewise not be appropriate relief. *See* N.C.G.S. § 15A-1417 (2011).

Criminal sentences may be invalidated for cognizable legal error demonstrated in appropriate proceedings. But, in the absence of legal error, it is not the role of the judiciary to engage in discretionary sentence reduction. That power resides in the executive branch, as established by the state constitution and acts of the General Assembly.[1] The Superior Court erred in applying the SSA to a sen-

---

1. In 2005, 2007, 2009, and 2011, the General Assembly directed the Post-Release Supervision and Parole Commission to determine whether inmates sentenced under previous sentencing standards have served more time in custody than they would have served if they had received the maximum sentence under the SSA. Current Operations and Capital Improvements Appropriations Act of 2005, ch. 276, sec. 17.28.(a)-(c), 2005

tence controlled exclusively by the FSA. Exercising our general supervisory role to ensure the uniform application of North Carolina's criminal statutes, we vacate the Superior Court's 17 May 2011 order and judgment and remand to the trial court for reinstatement of the original 29 July 1994 judgment.

VACATED AND REMANDED.

---

N.C. Sess. Laws 668, 948-49; Current Operations and Capital Improvements Appropriations Act of 2007, ch. 323, sec. 17.11.(a)-(c), 2007 N.C. Sess. Laws 616, 841-42; Current Operations and Capital Improvements Appropriations Act of 2009, ch. 451, sec. 19.8.(a)-(c), 2009 N.C. Sess. Laws 914, 1114-15; Current Operations and Capital Improvements Appropriations Act of 2011, ch. 145, sec. 18.7.(a)-(c), 2011 3 N.C. Adv. Legis. Serv. 109, 358-59 (LexisNexis). These provisions instructed the Commission to report its findings and reinitiate the parole review process for offenders in this class. Defendant's sentence appears to fall within the purview of this directive. In addition, wholly independent of the Commission's grant of authority, the state constitution empowers the Governor to "grant reprieves, commutations, and pardons, after conviction, for all offenses . . . upon such conditions as he may think proper." N.C. Const. art. III, § 5(6).