NO. COA13-365

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

STATE OF NORTH CAROLINA

v.

Cumberland County
Nos. 91 CRS 1552-53, 1578, 1893,
1895, 2408

TERRANCE WILKERSON

Review stemming from the allowance of a petition for the issuance of a writ of certiorari filed by the State challenging an order entered 17 December 2012 by Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of Appeals 26 September 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

> *Sarah Jessica Farber, for Defendant-Appellee.*

ERVIN, Judge.

The State has sought appellate review of an order granting Defendant Terrance Wilkerson's motion for appropriate relief; vacating judgments entered on 5 December 1991 stemming from Defendant's convictions for second degree burglary, three counts of felonious breaking or entering, four counts of felonious larceny, and two counts of possession of stolen property; and resentencing Defendant to a term of 21 years imprisonment. On appeal, the State contends that the trial court erroneously concluded that the sentences contained in the original judgments

entered in these cases resulted in the imposition of a cruel and unusual punishment upon Defendant. After careful consideration of the State's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be reversed and that this case should be remanded to the Cumberland County Superior Court for reinstatement of the original judgments imposed in these cases.

## I. Factual Background

Between 14 December 1990 and 12 January 1991, Defendant broke into several homes and stole various items of property. At the time that he committed these criminal offenses, Defendant was sixteen years old and had no prior criminal record.

On 13 January 1991, warrants for arrest were issued charging Defendant with two counts of possession of stolen property, second degree burglary, two counts of felonious breaking or entering, and three counts of felonious larceny. On 2 April 1991, the Cumberland County grand jury returned bills of indictment charging Defendant with two counts of second degree burglary, four counts of felonious breaking or entering, six counts of felonious larceny, and six counts of possession of stolen property. On 4 December 1991, Defendant entered pleas of guilty to one count of second degree burglary, four counts of felonious larceny, three counts of felonious breaking or entering, and two counts of possession of stolen property. In return for Defendant's guilty pleas, the State

voluntarily dismissed the remaining charges that had been lodged against him. At the conclusion of the proceedings that occurred in connection with the entry of Defendant's guilty pleas, Judge William C. Gore, Jr., found as aggravating factors that "[t]he defendant involved a person under the age of 16 in the commission of the crime" and that "[t]he offense involved the actual taking of property of great monetary value"; found as mitigating factors that "[t]he defendant ha[d] no record of criminal convictions" and that, "[a]t an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer"; determined that the "factors in aggravation outweigh[ed] the factors in mitigation"; and entered a judgment in the case in which Defendant had been convicted of second degree burglary sentencing him to a term of 40 years imprisonment. In addition, based upon the same findings in aggravation and mitigation, Judge Gore consolidated one of Defendant's convictions for felonious breaking or entering and one of Defendant's convictions for felonious larceny for judgment and sentenced Defendant to a consecutive term of ten years imprisonment. Finally, Judge Gore entered judgments sentencing Defendant to a concurrent term of three years imprisonment based upon a conviction for felonious larceny, to a concurrent term of three years imprisonment based upon consolidated convictions for felonious breaking or entering and felonious larceny, to a

concurrent term of three years imprisonment based upon a conviction for possession of stolen property, to a concurrent term of three years imprisonment based upon convictions for felonious breaking or entering and felonious larceny, and to a concurrent term of three years imprisonment based upon a conviction for possession of stolen property. As a result, Judge Gore's judgments effectively required Defendant to serve a term of fifty years imprisonment based upon these convictions.

On 27 June 2012, Defendant filed a motion for appropriate relief in which he requested the court to "arrest" his sentences and resentence him in such a manner as to avoid subjecting him to cruel and unusual punishment. Defendant's motion for appropriate relief rested upon the contention that his fifty year sentence for a series of nonviolent property crimes committed when he was sixteen years old was grossly disproportionate to the maximum sentence that he could receive in the event that he was sentenced for committing the same crimes under the current sentencing statutes and contravened the protections against the imposition of cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution and N.C. Const. art. I, § 27.[1] On

---

[1]Although Defendant argued that his sentences violated N.C. Const. art. I, § 27, in his motion for appropriate relief, the trial court made no reference to this provision of the state constitution in its order and Defendant has not advanced any argument stemming from the state constitution in his brief. For

25 July 2012, the trial court entered an order concluding that "Defendant's Motion for Appropriate Relief has merit, that summary disposition is inappropriate, and that a hearing is necessary." The State filed a written response to Defendant's motion for appropriate relief on 24 August 2012 in which it requested that Defendant receive no relief.

A hearing was held with respect to Defendant's motion for appropriate relief on 11 December 2012. On 17 December 2012, the trial court entered an order granting Defendant's motion for appropriate relief on the grounds that, "[u]nder evolving standards of decency," the sentence embodied in the judgments entered by Judge Gore was excessive and disproportionate to the crimes for which Defendant had been convicted in violation of the Eighth Amendment and was, for that reason, invalid. As a result, the trial court vacated the judgments that had been entered by Judge Gore, resentenced Defendant to a term of 21 years imprisonment, gave Defendant credit for 21 years and 6 days in pretrial confinement, and ordered that Defendant be immediately released.

On 17 December 2012, the State filed petitions seeking the issuance of a writ of *certiorari* authorizing appellate review of the 17 December 2012 order and the issuance of a writ of

those reasons, we will treat this case as arising solely under the relevant provision of the United States constitution.

*superseadeas* staying the trial court's order pending the completion of the appellate review process. On 2 January 2013, this Court granted the State's petitions.

## II. Substantive Legal Analysis

### A. Appellate Jurisdiction

As an initial matter, we are required to address Defendant's contention that this Court lacked the authority to grant the State's petition for the issuance of a writ of *certiorari*. In view of the fact that a panel of this Court has previously rejected this contention in the course of granting the State's *certiorari* petition, we are required to do so as well. *N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631-32 (1983) (stating that, "once a panel of the Court of Appeals has decided a question in a given case[,] that decision becomes the law of the case and governs other panels which may thereafter consider the case" and that, "since the power of one panel of the Court of Appeals is equal to and coordinate with that of another, a succeeding panel of that court has no power to review the decision of another panel on the same question in the same case"). In addition, for the reasons set forth in detail below, we also believe that this Court had the authority to grant the State's *certiorari* petition.

"The Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe." N.C. Const. art. IV, §

12(2). According to N.C. Gen. Stat. § 7A-32(c), this Court has the authority to issue writs of *certiorari* "in aid of its own jurisdiction, or to supervise and control the proceedings of any of the trial courts of the General Court of Justice." N.C. Gen. Stat. § 32(c). As a result, given that a "[trial] court's ruling on a motion for appropriate relief pursuant to [N.C. Gen. Stat. §] 15A-1415 is subject to review . . . [i]f the time for appeal has expired and no appeal is pending, by writ of certiorari," N.C. Gen. Stat. § 15A-1422(c)(3), *see State v. Dammons*, 128 N.C. App. 16, 22, 493 S.E.2d 480, 484 (stating that "[t]his Court may review a trial court's ruling on a motion for appropriate relief if 'the time for appeal has expired and no appeal is pending, by writ of certiorari'") (quoting N.C. Gen. Stat. § 15A-1422(c)(3)), *disc. review denied*, 342 N.C. 660, 465 S.E.2d 547 (1997); *State v. Morgan*, 118 N.C. App. 461, 463, 455 S.E.2d 490, 491 (1995) (stating that "[a] trial 'court's ruling on a motion for appropriate relief pursuant to [N.C. Gen. Stat. §] 15A-1415 is subject to review . . . [i]f the time for appeal has expired and no appeal is pending, by writ of certiorari'") (citations omitted), and given that the issuance of a writ of *certiorari* in situations such as this one is necessary to "supervise and control" proceedings in the trial courts, *see Troy v. Tucker*, 126 N.C. App. 213, 215, 484 S.E.2d 98, 99 (1997) (recognizing the existence of our supervisory jurisdiction over the trial courts as authorized by N.C. Const.

art. IV, § 12 and N.C. Gen. Stat. § 7A-32(c)); *In re Robinson*, 120 N.C. App. 874, 875, 464 S.E.2d 86, 87 (1995) (granting *certiorari* "pursuant to [this Court's] supervisory power under [N.C. Gen. Stat. §] 7A-32(c)"), we clearly had ample authority to grant the State's request for the issuance of a writ of *certiorari* authorizing review of the trial court's order in this case.

In support of his contention to the contrary, Defendant cites a previous decision by this Court refusing to issue a writ of *certiorari* requested by the State on the grounds that the issuance of the requested writ was not authorized by N.C. R. App. P. 21(a)(1), which provides that a writ of certiorari may be issued in appropriate circumstances by either appellate court to "'permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to [N.C. Gen. Stat.] § 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief.'" *State v. Starkey*, 177 N.C. App. 264, 268, 628 S.E.2d 424, 426, *cert denied*, __ N.C. __, 636 S.E.2d 196 (2006) (quoting N.C. R. App. P. 21(a)(1). According to the logic enunciated in *Starkey*, since N.C. R. App. P. 21 limits *certiorari* review of orders granting or denying motions for appropriate relief to orders denying such motions and since the State sought review of an order granting a defendant's motion for appropriate relief,

we lacked authority to issue the requested writ. *Id.* As a result, however, of the fact that *Starkey* conflicts with several decisions of the Supreme Court that authorize review of trial court decisions granting motions for appropriate relief filed by a defendant, our decision in *Starkey* does not stand as an obstacle to the allowance of the State's *certiorari* petition. *See State v. Whitehead*, 365 N.C. 444, 445-46, 722 S.E.2d 492, 494 (2012) (granting the State's petition for the issuance of a writ of *certiorari* for the purpose of reviewing a trial court order granting a motion for appropriate relief); *State v. Frogge*, 359 N.C. 228, 230, 607 S.E.2d 627, 628-29 (2005) (granting a petition for the issuance of a writ of *certiorari* authorizing review of a trial court order granting a defendant's motion for appropriate relief), *cert. denied*, 531 U.S. 994, 121 S. Ct. 487, 148 L. Ed. 2d 459 (2000); *State v. McDowell*, 310 N.C. 61, 62, 310 S.E.2d 301, 301 (1984) (allowing a petition for the issuance of a writ of *certiorari* filed by the State seeking review of a trial court order granting defendant's motion for appropriate relief). As a result of the fact that the logic adopted in *Starkey* would be equally applicable to the situations at issue in *Whitehead*, *Frogge*, and *McDowell*, and since nothing in N.C. R. App. P. 21 makes any distinction between our authority to issue writs of *certiorari* in response to petitions filed by the State seeking review of orders granting a motion for appropriate relief and that of the Supreme Court, we believe that our decision

in *Starkey* is inconsistent with prior and subsequent decisions of the Supreme Court and is not, for that reason, controlling in the present case.[2] *See State v. Davis*, 198 N.C. App. 443, 449, 680 S.E.2d 239, 244 (2009) (this Court "decline[d] to follow" an earlier Court of Appeals decision "inconsistent with prior decisions of this Court and our Supreme Court"); *Cissell v. Glover Landscape Supply, Inc.*, 126 N.C. App. 667, 670 n.1, 486 S.E.2d 472, 473 n.1 (1997), *rev'd on other grounds*, 348 N.C. 67, 497 S.E.2d 283 (1998) (stating that, "because that case is inconsistent with prior decisions of this Court and our Supreme Court, we decline to follow it."). Our conclusion to this effect is reinforced by our recognition of the fact that the rules of appellate procedure "shall not be construed to extend or limit the

_____

[2]In addition, this Court has granted petitions for writs of *certiorari* filed by the State for the purpose of seeking review of orders allowing motions for appropriate relief in previous cases. *See State v. Bonsteel*, 160 N.C. App. 709, __ S.E.2d __ (2003) (unpublished) (granting the State's petition for the issuance of a writ of c*ertiorari* for the purpose of reviewing a trial court order granting a defendant's motion for appropriate relief); *State v. Rubio*, __ N.C. App. __, 732 S.E.2d 393 (2012) (unpublished), *disc. review dismissed*, __ N.C. __, 735 S.E.2d 824 (2013) (citing N.C. Gen. Stat. § 15A-1422(c)(3) as the basis for asserting jurisdiction over an order granting a defendant's motion for appropriate relief). Although we are not bound by our prior unpublished decisions, *see United Services Automobile Assn. v. Simpson*, 126 N.C. App. 393, 396, 485 S.E.2d 337, 339, *disc. review denied*, 347 N.C. 141, 492 S.E.2d 37 (1997) (holding that this Court is not bound by a prior unpublished decision of another panel of this Court), we believe that *Bonsteel* and *Rubio* shed additional light on our authority to grant the State's request for *certiorari* review of an order granting a defendant's motion for appropriate relief.

jurisdiction of the courts of the appellate division as that is established by law," N.C. R. App. P. 1(c); the fact that our authority to grant *certiorari* for the purpose of reviewing orders granting or denying motions for appropriate relief is established by N.C. Gen. Stat. § 15A-1422(c)(3); and the fact that the approach adopted in *Starkey*, contrary to N.C. R. App. P. 1, treats N.C. R. App. P. 21 as limiting the jurisdiction afforded to this Court by the General Assembly. As a result, we have no hesitation in concluding that this Court did, in fact, have the authority to grant the State's petition for the issuance of a writ of *certiorari* in this case and will proceed to address the merits of the State's challenge to the trial court's order.

## B. Validity of Trial Court's Order

### 1. Standard of Review

"When considering rulings on motions for appropriate relief, we review the trial court's order to determine 'whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.'" *Frogge*, 359 N.C. at 240, 607 S.E.2d at 634 (quoting *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982)). "'When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of

discretion. However, the trial court's conclusions are fully reviewable on appeal.'" *State v. Lutz*, 177 N.C. App. 140, 142, 628 S.E.2d 34, 35 (2006) (quoting *State v. Wilkins*, 131 N.C. App. 220, 223, 506 S.E.2d 274, 276 (1998)). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004). Because the facts underlying this case as described in the trial court's findings of fact are essentially undisputed, the only issue that we are required to address in this case is whether the trial court correctly concluded that, on the basis of the present record, Defendant was entitled to relief from Judge Gore's original judgments on Eighth Amendment grounds.

2. Trial Court's Jurisdiction Over Defendant's Motion

In its initial challenge to the trial court's judgment, the State argues that the trial court lacked jurisdiction to vacate Judge Gore's original judgments. More specifically, the State contends that no provision of N.C. Gen. Stat. § 15A-1415 authorized the trial court to enter an order vacating Defendant's original judgments, resentencing Defendant, and ordering that he be released. We do not find this aspect of the State's argument persuasive.

According to N.C. Gen. Stat. § 15A-1415(b), a convicted criminal defendant is entitled to seek relief from a trial court

judgment by means of a motion for appropriate relief filed more than ten days after the entry of judgment on the basis of certain specifically enumerated grounds. *See* N.C. Gen. Stat. § 15A-1415(b). As we have recently stated, "N.C. Gen. Stat. § 15A-1415(b) clearly provides that the eight specific grounds listed in that statutory subsection are 'the only grounds which the defendant may assert by a motion for appropriate relief made more than 10 days after the entry of judgment,'" so that "a trial court lacks jurisdiction over the subject matter of a claim for postconviction relief which does not fall within one of the categories specified in N.C. Gen. Stat. § 15A-1415(b)." *State v. Harwood*, __ N.C. App. __, __, 746 S.E.2d 445, 450, *disc. review dismissed*, __ N.C. __, 748 S.E.2d 320 (2013).

In its order, the trial court concluded that it had the authority to grant the requested relief pursuant to N.C. Gen. Stat. §§ 15A-1415(b)(4) and (b)(8), which authorize an award of postconviction relief in the event that "[t]he defendant was convicted or sentenced under a statute that was in violation of the Constitution of the United States or the Constitution of North Carolina," N.C. Gen. Stat. § 15A-1415(b)(4), or that "[t]he sentence imposed was unauthorized at the time imposed, contained a type of sentence disposition or a term of imprisonment not authorized for the particular class of offense and prior record or conviction level was illegally imposed, or is otherwise invalid as

a matter of law." N.C. Gen. Stat. § 15A-1415(b)(8). The fact that Defendant did not cite N.C. Gen. Stat. § 15A-1415(b)(4) before the trial court is irrelevant to the required jurisdictional determination given the fact that the constitutional nature of Defendant's challenge to Judge Gore's original judgments was clearly stated in Defendant's motion for appropriate relief and the fact that the trial court has the authority, in appropriate cases, to grant postconviction relief on its own motion. N.C. Gen. Stat. § 15A-1420(d) (stating that, "[a]t any time that a defendant would be entitled to relief by motion for appropriate relief, the court may grant such relief upon its own motion"). Similarly, the fact that the sentences imposed in Judge Gore's original judgments were not unauthorized, invalid, or otherwise unlawful at the time that they were imposed does not, contrary to the State's argument, preclude an award of relief based on N.C. Gen. Stat. § 15A-1415(b)(8) given that the reference to "at the time imposed" in the relevant statutory language does not modify the language authorizing a grant of relief in the event that the defendant's sentence "is otherwise invalid as a matter of law." In fact, acceptance of the State's argument that the trial court lacked the authority to enter the challenged order would necessarily mean that trial judges have no authority to grant postconviction sentencing relief on Eighth Amendment grounds after the time for noting a direct appeal has expired, an outcome which

we do not believe to have been within the General Assembly's contemplation and which is not consistent with our postconviction jurisprudence. *State v. Bonds*, 45 N.C. App. 62, 64, 262 S.E.2d 340, 342 (stating that, "[i]f a judgment is invalid as a matter of law, the courts of North Carolina have always had the authority to vacate such judgments pursuant to petition for writ of habeas corpus and, more recently, by way of postconviction proceedings"), *app. dismissed*, 300 N.C. 376, 267 S.E.2d 687, *cert. denied*, 449 U.S. 883, 101 S. Ct. 235, 66 L. Ed. 2d 107 (1980). As a result of the fact that Defendant has asserted in his motion for appropriate relief that the sentences imposed in Judge Gore's original judgment are disproportionate to the offenses for which he was convicted in violation of the Eighth Amendment and that those sentences were, for that reason, invalid, the trial court clearly had jurisdiction to reach the merits of Defendant's challenge to Judge Gore's original judgments pursuant to N.C. Gen. Stat. §§ 15A-1415(b)(4) and (b)(8).

This Court has recently addressed and rejected the same argument in a case in which the trial court granted a defendant's motion for appropriate relief and vacated his life sentence, which had been imposed upon him in 1973 as the result of his conviction for second degree burglary, on the basis of a conclusion that, "under evolving standards, [defendant's] sentence violated the Eighth Amendment and is invalid as a matter of law." *State v.*

*Stubbs*, __ N.C. App. __, __, __ S.E.2d __, __ (2014). Although the State argued before this Court in that case, as it has here, that nothing in N.C. Gen. Stat. § 15A-1415 authorized the trial court to modify the defendant's original sentence, *Id.* at __, __ S.E.2d at __, we concluded that "the trial court had jurisdiction over the [original] judgment to consider whether defendant's sentence was 'invalid as a matter of law.'" *Id.* at __, __ S.E.2d at __ (quoting N.C. Gen. Stat. § 15A-1415(b)(8)).[3] As a result, in light of the literal language of N.C. Gen. Stat. §§ 15A-1415(b)(4) and (b)(8) and our decision in *Stubbs*, we hold that the trial court had jurisdiction to consider Defendant's challenges to Judge Gore's original judgments on the merits.

### 3. Gross Disproportionality

Secondly, the State contends that, even if the trial court had jurisdiction to consider the validity of Defendant's challenge to Judge Gore's original judgments, it erred by determining that

---

[3]In support of its argument that the trial court lacked the authority to consider Defendant's challenge to the judgments at issue here, the State cites the Supreme Court's decision in *Whitehead* to the effect that, "[h]aving concluded that defendant is not entitled to resentencing under the [Structured Sentencing Act], we also note that defendant's [motion for appropriate relief] provides no appropriate grounds for resentencing under the [Fair Sentencing Act]." *Whitehead*, 365 N.C. at 448, 722 S.E.2d at 495. In this case, unlike *Whitehead*, Defendant has advanced a constitutional, rather than a merely statutory, challenge to the validity of Judge Gore's original judgments, a fact which distinguishes this case from *Whitehead* and gave the trial court the authority to consider the merits of Defendant's motion for appropriate relief.

the sentences that Defendant was currently serving subjected him to cruel and unusual punishment in violation of the Eighth Amendment. We agree.

The Eighth Amendment to the United States Constitution, which has been made applicable to the states through the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 2021, 176 L. Ed. 2d 825, 835 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 549, 54 L. Ed. 793, 798 (1910)). We view the concept of proportionality according to "'the evolving standards of decency that mark the progress of a maturing society.'" *Miller v. Alabama*, __ U.S. __, __, 132 S. Ct. 2455, 2463, 183 L. Ed. 2d 407, 417 (2012) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 290 50 L. Ed. 2d 251, 259 (1976)). "The Eighth Amendment does not[, however,] require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S. Ct. 2680, 2705, 115 L. Ed. 2d 836, 869

(1991) (Justice Kennedy, joined by Justices O'Connor and Souter, concurring) (internal quotations and citations omitted). As a result, "'[o]nly in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment.'" *State v. Clifton*, 158 N.C. App. 88, 94, 580 S.E.2d 40, 45 (quoting *State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 441 (1983)), *cert. denied*, 357 N.C. 463, 586 S.E.2d 266 (2003). "[I]n the absence of legal error, it is not the role of the judiciary to engage in discretionary sentence reduction," since "that power resides in the executive branch, as established by the state constitution and acts of the General Assembly," *Whitehead*, 365 N.C. at 448, 722 S.E.2d at 496, and since "our General Assembly has directed the Post-Release Supervision and Parole Commission to review matters of proportionality" arising from the changes in the statutory provisions governing the sentencing of convicted criminal defendants that have been enacted in recent years. *Stubbs*, __ N.C. App. at __, __ S.E.2d at __.[4]

---

[4]Although the State has argued at length that, "outside the capital context, there is no general proportionality principle inherent in the prohibition against cruel and unusual punishment," we believe that the relevant decisions of the United States Supreme Court clearly state the "gross disproportionality" test discussed in the text of this opinion for use in non-capital cases and do not understand the State to be advancing a contrary assertion.

As the United States Supreme Court has explained, "cases addressing the proportionality of sentences fall within two general classifications[:]" first, "challenges to the length of term-of-years sentences given all the circumstances in a particular case[;]" and second, "cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty." *Graham*, 560 U.S. at 59, 130 S. Ct. at 2021, 176 L. Ed. 2d at 836. "In the first classification the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive" *Id.*, with that determination beginning with a comparison of "the gravity of the offense and the severity of the sentence." *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022, 176 L. Ed. 2d at 836 (citing *Harmelin*, 501 U.S. at 1005, 111 S. Ct. at 2707, 115 L. Ed. 2d at 871 (Justice Kennedy, joined by Justices O'Connor and Souter, concurring)). "'[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality[,]' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly

rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S. Ct. 1133, 1138, 63 L. Ed. 2d 382, 390 (1980).

The trial court reached the conclusion that Defendant had been subjected to cruel and unusual punishment based upon a consideration of "(1) the gravity of the offense, (2) the harshness of the penalty, and (3) the sentences for other crimes within the jurisdiction." In seeking to persuade us to uphold the trial court's order, Defendant notes that he was a juvenile at the time that the offenses in question were committed, points out that he would receive a significantly shorter term of imprisonment in the event that he were to be sentenced under current law, and argues that his sentence of 50 years imprisonment with the possibility of parole based upon his convictions for second degree burglary, felonious breaking or entering, felonious larceny, and possession of stolen property was grossly disproportionate to the crimes committed. We do not find Defendant's argument persuasive.[5]

---

[5]The parties do not appear to agree upon the sentence upon which we should focus our attention in analyzing the validity of the State's challenge to the trial court's order. On the one hand, Defendant's argument rests upon the assumption that we should view the sum total of the sentences embodied in Judge Gore's original judgments as a single term of imprisonment while the State appears to suggest that we should focus our attention on the specific sentence that Defendant is currently serving. As a result of the fact that we do not believe that this difference of opinion has any bearing on the ultimate outcome that we should reach in this case, we will assume, without deciding, that the approach taken by Defendant is the correct one.

The first problem with the trial court's order is that the trial court claimed to have erroneously considered a comparison of the sentence imposed upon Defendant with sentences imposed upon others under more recent statutory sentencing provisions in the course of determining whether Defendant's sentence was grossly disproportionate. However, a comparison of the sentence imposed upon Defendant to the sentences that have been or could be imposed upon other convicted felons is not relevant to the issues raised by Defendant's motion for appropriate relief until after a finding of "gross disproportionality" had been made. *See Graham*, 560 U.S. at 60, 130 S. Ct. at 2022, 176 L. Ed. 2d at 836 (stating that an evaluation of the gravity of the offense for which the defendant had been convicted and the severity of the sentence imposed upon the defendant based upon that conviction for the purpose of determining whether the defendant's sentence was grossly disproportionate must be undertaken before the court compares a defendant's sentence to the sentences of others for similar offenses); *Harmelin*, 501 U.S. at 1005, 111 S. Ct. at 2707, 115 L. Ed. 2d at 871 (stating that "[a] better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality") (Justice Kennedy, joined by Justices O'Connor and Souter, concurring). For that

reason, the extent to which Defendant would have been subject to a less severe sentence in the event that he had been sentenced under current sentencing law has no bearing upon the initial phase of the required Eighth Amendment analysis. As a result, the trial court erred by apparently failing to make a determination that Defendant's sentence was grossly disproportionate without taking subsequent sentencing amendments into account before concluding that Judge Gore's original judgments should be vacated and that Defendant should be resentenced.

In addition, we are unable to agree that Defendant has established that the sentence embodied in Judge Gore's original judgments was grossly disproportionate. Although Defendant was a juvenile at the time that he committed the offenses that led to the challenged trial court judgments and although the offenses for which Defendant was convicted were not violent in nature, he pled guilty to one count of second degree burglary, three counts of felonious breaking or entering, four counts of felonious larceny, and two counts of possession of stolen property, resulting in a total of ten felony convictions. Moreover, despite the fact that Defendant's convictions did, as he points out in his brief, result from the commission of nonviolent property crimes, the fact that he was convicted of committing ten felony offenses, the fact that second degree burglary is a particularly serious offense involving the breaking and entering of a residence in the nighttime with the

intent to commit a felony or any larceny, *State v. Beaver*, 291 N.C. 137, 141, 229 S.E.2d 179, 181 (1976) (stating that "[t]he distinction between the two degrees [of burglary] depends upon the actual occupancy of the dwelling house or sleeping apartment at the time of the commission of the crime"), and the fact that, in two of the cases at issue here, Defendant was found to have taken property of great value and involved a young person less than sixteen years old in the criminal activity in which he was engaged, are relevant to the constitutional validity of Judge Gore's decision to impose a particularly severe sentence in this case. Simply put, in light of the number of felony offenses for which Defendant was convicted, the fact that one of the offenses for which Defendant was convicted was a particularly serious one, and the fact that Defendant's conduct involved great financial harm and led to criminal activity on the part of a younger individual, we are unable to say that the sentence embodied in Judge Gore's original judgments was "grossly disproportionate." Our conclusion to this effect is buttressed by a careful examination of the reported appellate decisions addressing similar factual circumstances, all of which suggest that this is not one of the "exceedingly rare" and "extreme" cases in which the sentence upon Defendant is "grossly disproportionate." *See Ewing v. California*, 538 U.S. 11, 30-31, 123 S. Ct. 1179, 1190, 155 L. Ed. 2d 108, 123 (2003) (holding that a sentence of 25 years to life imprisonment

for larceny pursuant to a "three strikes and you're out" law did not constitute cruel and unusual punishment in violation of the Eighth Amendment); *Harmelin*, 501 U.S. at 1008-09, 111 S. Ct. at 2709, 115 L. Ed. 2d at 874 (holding that a sentence of life imprisonment without the possibility of parole for possession of cocaine was not so grossly disproportionate as to constitute cruel and unusual punishment in violation of the Eighth Amendment) (Justice Kennedy, joined by Justices O'Connor and Souter, concurring); *State v. Green*, 348 N.C. 588, 612, 502 S.E.2d 819, 834 (1998), *cert. denied*, 525 U.S. 1111, 119 S. Ct. 883, 142 L. Ed. 2d 783 (1999) (holding that a sentence of life imprisonment with the possibility of parole based upon a thirteen year old defendant's conviction for first degree sexual offense did not constitute cruel and unusual punishment in violation of the Eighth Amendment); *State v. Ford*, 297 N.C. 28, 32, 252 S.E.2d 717, 719 (1979) (holding that a sentence of life imprisonment for first degree burglary did not constitute cruel and unusual punishment in violation of the Eighth Amendment); *State v. Sweezy*, 291 N.C. 366, 384-85, 230 S.E.2d 524, 536 (1976) (holding that a sentence of life imprisonment for first degree burglary did not constitute cruel and unusual punishment in violation of the Eighth Amendment); *Stubbs*, __ N.C. App. at __, __ S.E.2d at __ (holding that a defendant's sentence of life imprisonment for a second degree burglary committed when the defendant was a juvenile did not

constitute cruel and unusual punishment in violation of the Eighth Amendment); *State v. Pettigrew*, 204 N.C. App. 248, 258-59, 693 S.E.2d 698, 705, *app. dismissed*, 364 N.C. 439, 706 S.E.2d 467 (2010) (holding that a sentence of 32 to 40 years imprisonment for two counts of first degree sexual offense committed when the defendant was sixteen years old did not constitute cruel and unusual punishment in violation of the Eighth Amendment). For all of these reasons, we see no basis for concluding that this is one of the "exceedingly rare noncapital cases" in which the sentence imposed is "grossly disproportionate" to the crimes for which Defendant stands convicted. As a result, we conclude that the sentence imposed upon Defendant in this case, while undoubtedly severe, is "not cruel or unusual in the constitutional sense," *Green*, 348 N.C. at 612, 502 S.E.2d at 834, and, for that reason, hold that the trial court's order should be reversed and that this case should be remanded to the Cumberland County Superior Court with instructions to reinstate Judge Gore's original judgments.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court erred by vacating Judge Gore's original judgments, resentencing Defendant, and ordering his immediate release. As a result, the trial court's order should be, and hereby is, reversed, and this case should be, and hereby is, remanded to the Cumberland

County Superior Court for reinstatement of Judge Gore's original judgments.

REVERSED AND REMANDED.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.